ALBERT M. COURY, SR., INDIVIDUALLY AND IN HIS CAPACITY AS THE GENERAL PARTNER OF AC-5 LIMITED PARTNERSHIP, AN ARIZONA LIMITED PARTNERSHIP, AND YVONNE COURY, APPELLANTS, v. NHU THI TRAN, AN INDIVIDUAL; AND MACDEL COMPANY, A NEVADA CORPORATION, RESPONDENTS.

No. 23701

May 25, 1995                                895 P.2d 650

*Jones, Jones, Close & Brown* and *Gary Goodheart* and *Paul A. Lemcke,* Las Vegas, for Appellants.

*Marc C. Gordon,* Las Vegas, for Respondent Tran.

*Lionel Sawyer & Collins* and *Cam Ferenbach,* Las Vegas, for Respondent Macdel Company.

## OPINION

*Per Curiam:*

The subject matter of the instant dispute is a 3.05 acre parcel of real property situated on the south end of the Las Vegas Strip. Appellants released a notice of lis pendens it had filed with an action to quiet title to that parcel. Shortly thereafter, respondent Macdel Company purchased the parcel. Then, appellants filed a second notice of lis pendens and filed suit to quiet title in its favor to the disputed parcel of real property. The district court cancelled appellants' second notice of lis pendens and granted summary judgment to respondents. For reasons discussed hereafter, we affirm the district court's cancellation of appellants' second notice of lis pendens and its summary judgment in favor of respondents.

### FACTS

The subject matter of the instant dispute is a 3.05 acre parcel of real property (Lot 2) situated on the southern extension of the Las Vegas Strip. That parcel was originally part of a larger 40 acre parcel before it was acquired by the State of Nevada (State) as a highway right-of-way. The remaining 36.95 acres (Lot 1) was eventually purchased by appellants Albert M. and Yvonne Coury (the Courys).[1]

The chain of title on Lot 1 serves as the origin of the ownership dispute over Lot 2. In 1965, the then-owner of Lot 1, Sidney Sobin, conveyed Lot 1 to Carl L. Reed, as receiver of Bryant Development Company. The Sobin-Reed deed conveys Lot 1,

---

[1]Appellants Albert M. and Yvonne Coury are Arizona residents who have investments in real property in Nevada. Appellant AC-5 Limited Partnership is an Arizona limited partnership registered to do business in the State of Nevada. Albert Coury, Sr. is the General Partner of AC-5 Limited Partnership.

AC-5 claims ownership to Lot 2 under a grant, bargain and sale deed recorded on January 2, 1986, by which AC-5 acquired Lot 1 from the Courys with the alleged understanding that the property was being acquired as a single 40 acre parcel, inclusive of the 3.05 acres which is now Lot 2. As currently situated, Lot 2 (3.05 acres) constitutes highway frontage for Lot 1 (36.95 acres).

"EXCEPTING THEREFROM the Westerly 200 feet thereof."[2] The "westerly 200 feet" of Lot 1 eventually became Lot 2.

During the period that the westerly 200 feet of Lot 1 continued to be maintained as a highway right-of-way, that portion of the property was not assessed and taxed by Clark County. Consequently, AC-5, the Courys, and their predecessors in interest only paid taxes on 36.95 acres of Lot 1. On April 21, 1982, some years after the Courys had acquired Lot 1, the State relinquished and abandoned[3] its highway right-of-way and the Clark County Assessor (Assessor) changed the land description of Lot 1 to include an additional 1.45 acres.[4] For the next two tax years the Courys were assessed and paid taxes on 38.40 acres in Lot 1.

In 1984, the Assessor re-parceled the highway right-of-way and created a new and separate parcel (Lot 2).[5] The new parcel (Lot 2) contained all 3.05 acres of highway right-of-way. The acreage on Lot 1 was simultaneously reduced and once again contained 36.95 acres. Sometime after the second re-parceling, the Clark County Treasurer's Office (Treasurer) began sending tax notices on Lot 2 to Sidney Sobin. The taxes were not paid.[6] Consequently, the Clark County Tax Receiver executed a tax deed transferring Lot 2 to the Treasurer in lieu of delinquent taxes, interest and penalties. On July 11, 1989, respondent Nhu Thi Tran (Tran) purchased Lot 2 for $37,000.00 at a tax sale conducted by the Treasurer. Six months later, appellants filed a

---

[2]Appellants allege that the 1965 Sobin-Reed deed was intended to account for a 200 foot highway easement over the westerly edge of Lot 1, and it was not intended to reserve a portion of Lot 1 in fee for Sidney Sobin. All of the post-1965 deeds on this property convey Lot 1 in its entirety, without specific mention of an easement. However, all of these deeds contain "subject to" clauses with respect to easements.

[3]When a highway easement is abandoned, the servient estate is relieved of the easement. NRS 408.523(3). In relevant part, this statute provides:

3. When a highway for which the state holds only an easement is abandoned, or when any other easement is abandoned, the property previously subject thereto is free from the public easement for highway purposes.

[4]The record does not indicate why the Assessor only increased Lot 1 by 1.45 acres or where the remaining 1.60 acres of the highway right-of-way was apportioned.

[5]The Assessor's transfer instruction states that "H/W [highway] acreage was not included in abutting property." Apparently, this is a reference to the exception of the westerly 200 feet of Lot 1 in the Sobin-Reed deed for the highway easement. The Assessor apparently interpreted the Sobin-Reed deed to reserve the fee interest to the highway easement in Sidney Sobin. Accordingly, the Assessor re-parceled the highway easement and created a new parcel (Lot 2). This flip-flop on the interpretation of the Sobin-Reed deed, by the Assessor, is the key to the present dispute.

[6]Tax notices were not sent to AC-5 or the Courys.

complaint to quiet title to Lot 2 and the first notice of lis pendens in the district court against Tran seeking to quiet title to Lot 2.

Meanwhile, Tran was in the process of negotiating a sale of Lot 2 to respondent Macdel Company (Macdel). In the course of searching the record of title to Lot 2, Chicago Title Company discovered the first lis pendens recorded by appellants. A representative of Chicago Title contacted appellants to inquire about the lis pendens and to notify them that Tran had an offer to buy Lot 2, but that the lis pendens was preventing its sale. On October 17, 1990, appellants voluntarily recorded a Release of Lis Pendens with knowledge that Tran was actively soliciting a buyer.[7] Consequently, the sale in escrow closed and Macdel took title to Lot 2.

Less than six months later, appellants filed a second complaint in the district court seeking a judicial decree quieting title to Lot 2. That action was identical to the action brought in 1990, except that Macdel, Clark County and Clark County's Assessor and Treasurer were named as additional defendants.[8] On September 16, 1991, nearly one year after Macdel acquired Lot 2, appellants recorded a second lis pendens.

In response, Macdel filed a motion to cancel lis pendens and for summary judgment on the quiet title complaint. Tran joined in Macdel's motion. On August 10, 1992, the district court cancelled the second lis pendens and granted summary judgment to Tran and Macdel on the quiet title action. This appeal ensued.

## LEGAL DISCUSSION

NRS 14.010 requires a plaintiff, at the time of filing a complaint affecting the title or possession of real property, to file a notice of the pendency of the action with the recorder of the county where the real property is situated. NRS 14.010(1). The purpose of recording the lis pendens is to give "constructive notice to a purchaser or encumbrancer of the property affected thereby" that the title to the property is disputed. NRS 14.010(3). When a notice of lis pendens has been voluntarily withdrawn,

> each person who thereafter acquires an interest in the property as a purchaser . . . for a valuable consideration . . . shall be deemed to be without knowledge of the action or of

---

[7]Appellants contend they released the first lis pendens because they were "wary of the possibility of legal exposure for clouding title upon hearing of the proposed sale."

[8]The action in the lower court against Clark County and its Assessor and Treasurer has been stayed pending the outcome of the instant case.

any matter, claim or allegation contained therein, irrespective of whether the person has or at any time had actual knowledge of the action or of any matter, claim or allegation contained therein.

NRS 14.017(1). The purpose of this statute is "to provide for the absolute and complete transferability of real property after the withdrawal or cancellation of a notice of the pendency of an action affecting the property." NRS 14.017(2).

The state of New York has a similar law. New York recognizes that the right to record a lis pendens is an extraordinary privilege granted to a litigant by statute. Israelson v. Bradley, 127 N.E.2d 313, 315 (N.Y. 1955). New York also recognizes that once a notice of lis pendens is cancelled a new one cannot be filed upon the same property and same cause of action. Deerfield Bldg. Corp. v. Yorkstate Indus., 353 N.Y.S.2d 331, 337 (N.Y. Sup. Ct. 1974).

In the present case, one year after Tran acquired Lot 2 at the tax sale she entered into an agreement to sell it to Macdel. In the course of searching the record of title to Lot 2, Chicago Title discovered the first lis pendens recorded by appellants. Chicago Title contacted appellants to inquire about the lis pendens and to notify them that Tran had an offer to buy Lot 2, but that the lis pendens was preventing its sale. Shortly thereafter, appellants voluntarily recorded a release of lis pendens with knowledge that Tran was actively soliciting a buyer. The sale in escrow closed and Macdel took title by virtue of a grant, bargain and sale deed for a purchase price of $240,000.00. Almost one year after the sale to Macdel, appellants filed a second notice of lis pendens on Lot 2.

When appellants released their first lis pendens on that parcel they acted with full knowledge of its proposed sale. We conclude that appellants cannot release a lis pendens in order to avoid potential legal liability, wait for the sale of the property to occur, and then renew their claims.[9] This is patently unfair to Macdel who, but for the release of the lis pendens, would not have purchased Lot 2. Appellants are the source of their own misfortune, having voluntarily released the first lis pendens. Moreover,

---

[9]The Nevada Legislature has expressly stated the purpose of NRS 14.017: "to provide for the absolute and complete transferability of real property after the withdrawal or cancellation of a notice of the pendency of an action affecting the property." NRS 14.017(2). That statute clearly indicates the legislative intent to relieve a prospective buyer of the possibility of continuing litigation over ownership of property once a lis pendens has been withdrawn.

allowing a second lis pendens would defeat the purpose of recording a lis pendens; which is to cloud title *before* a sale of property occurs so that the claims of a party may be resolved before transfer of title.

## CONCLUSION

Macdel's purchase of Lot 2 from Tran for valuable consideration after appellants withdrew their first lis pendens triggered NRS 14.017, which prohibits a second lis pendens. Accordingly, the district court's cancellation of the second lis pendens and its summary judgment in favor of respondents are affirmed.[10]

---

[10]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal.