OPINION OF THE COURT
Chief Judge Cooke.
A notice of pendency, commonly known as a “lis pendens,” can be a potent shield to protect litigants claiming an interest in real property. The powerful impact that this device has on the alienability of property, when conjoined with the facility with which it may be obtained, calls for its narrow application to only those lawsuits directly affecting title to, or the possession, use or *316 enjoyment of, real property. Consequently, a suit to specifically perform a contract for the sale of stock representing a beneficial ownership of real estate will not support the filing of a notice of pendency.
I
This action arises out of plaintiff’s unsuccessful attempt to purchase an office building and its land in Manhattan. The fee owner of this property was a limited partnership, defendant, 41 Fifth Ave. Associates (“Associates”). Defendants Fruchthandler Brothers Enterprises and Edward J. Minskoff were the limited partners in Associates, owning a 3% interest between them. The remaining 97% was owned by the general partner, defendant 41 Fifth Ave. Realty Corp. (“Realty Corporation”), which, in turn, was wholly owned by defendant O & Y Equity Corp.[1]
After extended negotiations, plaintiff and O & Y Equity reached an agreement to convey the property. Rather than an outright transfer of the title by deed, the transaction was constructed in terms of a sale of stock. This was allegedly done at defendants’ request in order to avoid the Nevz York City Real Property Transfer Tax. The contract provided that O & Y Equity would sell its shares in Realty Corporation and would cause the limited partners in Associates to convey their interests as well. The limited partners also signed this contract, agreeing to perform all acts required of them to consummate the transaction.
The contract was a lengthy document running over 40 pages, not including a number of extensive schedules. It expressly specified that Realty Corporation’s sole business was owning the general partnership in Associates and that Associates’ sole business was owning and operating the office building that plaintiff wished to acquire. The sale of the stock and title to the property were linked throughout the contract, which provided for title warranties and insurance, real estate tax protests, cancellation or adjustment upon taking by condemnation, and representations as to the stattis of the rents and leases in the building. Article 10 of the contract governed how the building would be operated pending closing. Paragraph 10.03 restricted Associates’ power to execute new leases and required O & Y Equity to have an experienced person “expend a reasonable *317 amount of time (i.e., an average of approximately 10 hours per regular work week)” to renew leases or obtain new tenants.
The closing never took place, and plaintiff’s $500,000 deposit was paid to defendants out of the escrow account. Plaintiff commenced this suit, alleging that defendants had failed to carry out their obligations under paragraph 10.03, which would cause irreparable injury to plaintiff and make it impossible to close title pursuant to the contract. The complaint further alleged that defendants refused to perform their other obligations. In its prayer for relief, plaintiff requested that defendants be ordered “to specifically perform the Contract specifically to comply with paragraphs 10.03(b) and 10.03(c) thereof and within a reasonable time thereafter, which time is to be set out by the Court to deliver title to the Property to plaintiff or its assignee;” plaintiff also sought an alternative remedy of money damages in the amount of $4,500,000, as well as judgment for $500,000 against defendant Bachner, Tally & Mantell.
Plaintiff filed the complaint and immediately filed a notice of pendency against the property owned by Associates. The notice described the underlying action as one to enforce a contract to sell the fee ownership in the property and to deliver its possession. Defendants moved to cancel the notice. While the motion was pending, plaintiff filed an amended complaint that added allegations of fraudulent conduct by defendants. Supreme Court denied the motion, without considering the effect of the amended complaint, on the ground that the original complaint was sufficient to sustain the notice of pendency. The Appellate Division, First Department, affirmed, with two Justices dissenting.
II
The question presented on this appeal concerns the right to obtain a provisional remedy authorized by the Legislature. Specifically, we are asked to decide whether an action to enforce a contract to sell the ownership interest in a realty-owning entity may be accompanied by a notice of pendency pursuant to CPLR 6501. Because the terms of the statute and its history do not support plaintiff’s claimed right to this provisional remedy, this court must reverse the decisions below and order that plaintiff’s notice of pendency be canceled.
A
The authority and requirements for securing a valid notice of pendency against real estate are set forth in CPLR article 65. CPLR 6501 provides: “A notice of pendency may be filed in any *318 action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property.” Once properly indexed, the notice acts as constructive notice to all subsequent purchasers or incumbrancers: “A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as if he were a party” (CPLR 6501). It is this special consequence, resulting as a matter of law from the filing of the statutory notice of pendency which is the essence of the remedy afforded by the Legislature.
This, of course, is not a recent innovation. CPLR 6501 cam trace its lineage directly back to the Code of Procedure enacted in 1848 (see L 1848, ch 379, § 111). A still earlier law required a notice of pendency in mortgage foreclosures (see L 1840, ch 342, §§ 8, 9, as amd by L 1844, ch 346, §§ 4, 5). These statutes, however, merely evolved from the common-law doctrine of lis pendens.[2]
The doctrine of lis pendens is long livéd. It was first formal ly recognized in New York by Chancellor Kent in 1815 (Murray v Ballou, 1 Johns Ch 566; see 2 Reeves, Real Property, § 750, p 1045). It can be traced at least to rule 12 of Lord Chancellor Bacon’s Ordinances for the Government of the Court of Chancery, adopted in 1618 (see Murray v Blatchford, 1 Wend 583, 594; Bennett, Lis Pendens, pp 57, 437). The doctrine was applied in actions concerning real property before Lord Bacon prescribed its use in chancery (see Bennett, op. cit., at pp 59, 96), and one commentator ascribed the rule’s remote derivation to Roman Law (see id., § 9, pp 62-63).
The rule itself provided substantially the same protection as the modern statute. The doctrine of lis pendens — the pendency of a suit — “was, of itself, notice to the purchaser * * * It is no more than an adoption of the rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in the real action will overreach such alienation” (Murray v Ballou, supra, at p 577; see Leitch v Wells, 48 Barb 637, 649, revd 48 NY 585; Murray v Blatchford, 1 Wend 583, 618, supra; Aron, NY Real Property Law, p 204; 2 Reeves, op. cit., at pp 1044-1045; Note, Application of Lis Pendens to Personalty, 47 Harv L Rev 1023,1024-1025). For the purposes of lis pendens, a suit was not begun until the summons was served *319 and the complaint filed (see Leitch v Wells, 48 NY 585, 609-610, revg 48 Barb 637, supra; Murray v Blatchford, supra, at p 618; Murray v Ballou, supra, at p 576).
The purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit. Courts and commentators acknowledged the doctrine’s potentially harsh impact on innocent purchasers, but they willingly accepted this as a necessary concomitant to preserving the judicial power (see Leitch v Wells, supra, at pp 608-609; Murray v Ballou, supra, at pp 576-577; Bennett, op. cit., §§ 12, 14; 5 Tiffany, Real Property [3d ed], § 1294, p 82). Some justification for the doctrine’s rugged application was found by reference to the rule of caveat emptor (see Murray v Ballou, supra, at p 577; Bennett, op. cit., § 21, p 82). The statutes diminished this effect by requiring that a notice of pendency be filed in a central registry.[3]
B
Determining the substantive scope of the notice of pendency, as embodied in CPLR 6501, cannot be divorced from consideration of the relative procedural ease with which it can be imposed throughout the duration of a lawsuit. Basically, a plaintiff can cloud a defendant’s title merely by serving a summons and filing a proper complaint and notice of pendency stating the names of the parties, the object of the action, and a description of the property (CPLR 6511, subds [a], [b]; see Israelson v Bradley, 308 NY 511). Indeed, the notice of pendency may even precede the service of summons (CPLR 6511, subd [a]; 6512). The notice is valid for three years and it may be extended by court order (CPLR 6513).
*320 Critically, the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review. To the extent that a motion to cancel the notice of pendency is available (CPLR 6514), the court’s scope of review is circumscribed. One of the important factors in this regard is that the likelihood of success on the merits is irrelevant to determining the validity of the notice of pendency (see Interboro Operating Corp. v Commonwealth Security & Mtge. Corp., 269 NY 56; Keating v Hammerstein, 196 App Div 18, 21; Small Realty Co. v Strauss, 162 App Div 658; Brox v Riker, 56 App Div 388, 391).
Usually, there is little a court may do to provide relief to the property owner. If the procedures prescribed in article 65 have not been followed or if the action has not been commenced or prosecuted in good faith, the notice must be canceled in the first instance and it may be in the second (see Israelson v Bradley, supra; CPLR 6514, subds [a], [b]). If the notice of pendency is valid, the court may, in its discretion, cancel the notice, but the moving party will generally have to post an undertaking (CPLR 6515).
To counterbalance the ease with which a party may hinder another’s right to transfer property, this court has required strict compliance with the statutory procedural requirements (see Israelson v Bradley, 308 NY 511, supra). “This is an extraordinary privilege * * * If the terms imposed are not met, the privilege is at an end. Such has been the law of our State, as declared in cases over the years, which did not, however, reach this court.” (Id., at p 516 [citations omitted].)
In entertaining a motion to cancel, the court essentially is limited to reviewing the pleading to ascertain whether the action falls within the scope of CPLR 6501 (see Interboro Operating Corp. v Commonwealth Security & Mtge. Corp., supra; Keating v Hammerstein, supra; Jones v Armenia Ins. Co., 136 App Div 453; Brox v Riker, supra; Kunz v Bachman, 61 How Prac 519).[4] In conjunction with this concept, the complaint filed with the notice of pendency must be adequate unto itself; a subsequent, amended complaint cannot be used to justify an earlier notice of pendency (see Van Tuyl v New York Real Estate Security Co., 153 App Div 409, affd no opn sub nom. Carnegie Trust Co. v New York Real Estate Security Co., 207 NY 691; Brox v Riker, supra). This derives from the ancient concern that *321 would-be purchasers obtain adequate notice of the risk to the property’s title.
The same considerations that require strict compliance with the procedural prerequisites also mandate a narrow interpretation in reviewing whether an action is one affecting “the title to, or the possession, use or enjoyment of, real property” (CPLR 6501). Thus, a court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead, in accordance with historical practice, the court’s analysis is to be limited to the pleading’s face.
C
The courts have willingly given effect to the statute’s broad coverage of actions concerning land. Importantly, however, they have restricted its application by requiring that the relief requested be directly related to the statutory terms (see Aron, NY Real Property Law, p 205). Thus, attempts to impose a lis pendens against personal property in suits entirely unrelated to real property have been defeated (see Holbrook v New Jersey Zinc Co., 57 NY 616; Leitch v Wells, 48 NY 585, 612-613, supra [Earl, C.]; American Press Assn. v Brantingham, 75 App Div 435, 437-438; but cf. Bennett, op. cit., § 83; Note, 47 Harv L Rev 1023).
The courts have been frequently confronted by attempts to file a notice of pendency in controversies that more or less referred to real property, but which did not necessarily seek to directly affect title to or possession of the land. In the absence of this direct relationship, the remedy was denied. For example, an action brought under a will for an accounting and for a determination of rights to and sale of real property supported filing a notice of pendency (Kunz v Bachman, 61 How Prac 519, supra). In contrast, a trespass action seeking money damages only did not justify a notice of pendency as the judgment would not affect title to or possession of the realty (Hailey v Ano, 136 NY 569, 575).[5] Other decisions carry out this differentiation (compare Keating v Hammerstein, 196 App Div 18, supra [accounting for rents and impression of trust on realty; notice of pendency allowed]; and Small Realty Co. v Strauss, 162 App Div 658, supra [specific performance of contract to erect specified buildings; notice of pendency allowed], with Jones v Armenia Ins. Co., 136 App Div 453, supra [request for substitution of parties on *322 bond and mortgage, with request for receiver being incidental relief only; no notice allowed]; and Behrens v Sturges, 121 App Div 746 [broker’s suit for compensation based on increases in properties’ value sought money damages only; no notice allowed]; and Clark v Mclnnis Realty Co., 65 Misc 307 [purchaser at foreclosure sale not a proper party in suit over ownership of mortgage that did not involve controversy over title to property; no notice allowed]; see, also, 5 Tiffany, op. cit., § 1295; 7A Weinstein-Korn-Miller, NY Civ Prac, par 6501.05).
Two other cases demonstrate the niceties of the distinction involved in applying the doctrine. In Moeller v Wolkenberg (67 App Div 487), the plaintiff sought an injunction to have defendant remove a portion of his building that was encroaching on plaintiff’s property and to restrict defendant’s further construction that would weaken plaintiff’s building. A notice of pendency was deemed proper because the action would limit defen - dant’s use of the property. But a notice of pendency was held inappropriate in another encroachment action when the only relief sought was removal of the offending portions of defendant’s building (McManus v Weinstein, 108 App Div 301). McManus distinguished Moeller on the ground that, in McManus, no restriction on the defendant’s use of his property was involved (id., at pp 302-303).
This court has affirmed this strict approach. In Braunston v Anchorage Woods (10 NY2d 302), plaintiffs brought an action for nuisance for the dumping of surface water on their property. This court held that a notice of pendency was inappropriate in such a suit, which was to recover for a tort rather than to determine a claim of title to property (id., at p 305). “The usual object of filing a notice of lis pendens is to protect some right , title or interest claimed by a plaintiff in the lands of a defendant which might be lost under the recording acts in event of a transfer of the subject property by the defendant to a purchaser for value and without notice of the claim. This is not that kind of situation.” (Id., at p 305.)
Ill
The “direct relationship” requirement has received its fines t application when the action concerns the transfer of a chose in action or other personal property which represents the beneficial ownership of realty. This has most commonly arisen in situations, such as the present, when the transaction was for the sale of stock in a corporation whose sole or primary asset was real estate. Lower courts have placed such suits outside the *323 scope of CPLR 6501 and declined to permit a notice of pendency in those cases (see Chambi v Navarro, Vives & Cia, 95 AD2d 667; Whittemore v De Pasquale, 8 AD2d 793, affg 15 Misc 2d 648; Mageloff v Sarkin, 52 Misc 2d 737; Arcaro v Arcaro, 20 Misc 2d 489; see, also, Rosen v Rosen, 126 Misc 37 [interest in real estate investment partnership]; cf. Note, Partnership — Lis Pendens, 26 Col L Rev 488).[6] We agree.
As has been shown, the notice of pendency is derived from the lis pendens. The common-law rule’s potentially harsh effect against innocent purchasers has been alleviated by the statutory filing requirements. Its impact on alienability has also been diminished by authorizing the court to require an undertaking to be posted by the party who files the notice of pendency (CPLR 6515). Nevertheless, many of the concerns over the effect of the lis pendens still exist. Consequently, in interpreting the statute, the courts have continued to apply the same, narrow analysis as was invoked at common law. Thus the drastic impact of the notice of pendency authorized by CPLR 6501 requires a strict application of that statute.
In the present action, plaintiff cannot have the advantage of a notice of pendency. Although the prayer for relief seeks a transfer of title, the court must examine the complaint in its entirety. It is apparent from the allegations that the true action is to enforce a contract to sell stock. It is well settled that the property interests of a shareholder and the corporation are distinct. “[T]he corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets * * * even complete ownership of capital stock does not operate to transfer the title to corporate property and * * * ownership of capital stock is by no means identical with or equivalent to ownership of corporate property.” (Brock v Poor, 216 NY 387, 401.) To allow plaintiff here to have its notice of pendency would run counter to the Brock rule and muddle an otherwise clear concept. Consequently, the notice must be canceled.[7]
*324 Moreover, it is simply improper to use a notice of pendency as a form of attachment (see Brox v Riker, 56 App Div 388, 390, supra). But this does not necessarily leave plaintiff, and others similarly situated, with no protective devices whatsoever. The property’s conveyance may be blocked by, for example, attachment or injunction. In this way, a party may guard against conduct that will defeat the purpose of a lawsuit, but a court will have an opportunity to review the interference with alienability before it begins to operate.
Other considerations militate against permitting a notice of pendency when the actual subject of the conveyance is stock. It might be easy to justify the notice in the present case where i;he parties are transferring all of the ownership interest in an entity whose sole business is owning and operating a single office building, but the rule would be far more difficult to apply in other situations. For example, how great an interest must be purchased before a notice of pendency would be permitted? Would 90, 75, or more than 50% be required? Would enough to obtain effective control of the corporation be a sufficiently large interest? Or would any amount, even less than 5%, be adequate? Furthermore, what is to be done if the corporate business is diversified so that its realty ownership is only one facet of its operations? Indeed, the corporate real estate may be only incidental to its primary business (e.g., a manufacturer which owns its factory). To allow a would-be purchaser of stock, particularly of a minority interest, to tie up the corporate real estate merely by filing a complaint and a notice of pendency would be unreasonable.* ******[8]
There is another reason for denying a notice of pendency in cases such as the present. One of this court’s paramount goalsi is *325 to formulate equitable, stable rules by which individuals can reliably order their affairs. The complexity of society requires that exceptions be engrafted to the rules in order to maintain their equity. Exceptions, however, must be reluctantly drawn, lest they proliferate and render the rule meaningless. There is no compelling reason to create an exception to the traditional distinction set forth in Brock and, thereby, raise the possibility of future confusion.
IV
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendants’ motion to cancel the notice of pendency should be granted. The question certified is answered in the negative.
Jasen, J. (dissenting). I respectfully dissent for the reasons stated in the memorandum opinion of the majority at the Appellate Division (98 AD2d 632).
I would only add that, pursuant to CPLR 6501, “[a] notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property.” It is not disputed that the judgment demanded — specific performance of a contract to compel defendant to transfer full beneficial ownership of 475 Fifth Avenue — would inescapably affect the title to, and the possession, use and enjoyment of a specific parcel of real property. The essence of the instant transaction does not concern recovery of legal tender, securities, or articles of ordinary commerce, but, rather, the conveyance of real property. In recognition of the hybridization of modern applications of corporate law and traditional protections accorded to realty transfers, courts have sought to render such potentially divergent approaches complementary, rather than mutually exclusive. (See, e.g., Grossfeld v Beck, 42 AD2d 844 [a lis pendens was held applicable in a shareholder’s derivative action to impress a constructive trust on certain real property].) Under the plain language of the statute, the instant action for specific performance of what is essentially a contract for the transfer of real property should be subject to the lis pendens.
The view of the majority, that a lis pendens is inapplicable to a sale of stock representing an interest in real property, constitutes an unwarranted elevation of form over substance, with broad ramifications for the transfer of realty in this State. In an analogous context, the United States Supreme Court has held that the name or label given to a transaction is not dispositive, *326 but, rather, “‘form should be disregarded for substance and emphasis should be on economic reality.’ ” (United Housing Foundation v Forman, 421 US 837, 848, reh den 423 US 844, citing Tcherepnin v Knight, 389 US 332, 336 [emphasis added].)
By failing to take cognizance of the economic realities involved in this commercial transaction, the majority’s view may serve to render inapplicable other devices designed to limit purchaser risks. Inasmuch as the sale of stock representing realty is not a transaction involving real property under the majority’s rationale, nor is a sale of shares of stock representing realty considered a transfer of a chattel real (Matter of State Tax Comm. v Shor, 43 NY2d 151, 156), there exists substantial doubt as to whether title insurance companies are empowered to issue title insurance against loss by reason of defective title or encumbrances, upon the transfer of realty by means of a sale of stock. (Insurance Law, § 46, subd 18; § 432, subd 2.) There is also question, under the reasoning of the majority, as to whether the transfer of realty by means of a stock transfer would be subject to the protections of the Recording Act. (Real Property Law, § 290; see Note, Legal Characterization of the Individual’s Interest in a Cooperative Apartment: Realty or Personalty?, 73 Col L Rev 250, 268-270.) If the transfer of stock intimately intertwined with realty is not to be treated as a real properly transfer, nor to be treated as a sale of securities (United Housing Foundation v Forman, supra), the transaction may technically fall outside the scope of the Statute of Frauds (General Obligations Law, § 5-703; Uniform Commercial Code, § 8-319). While the weight of lower court authority suggests that a contract for the purchase of shares of stock representing realty is to be considered a contract for the transfer of real property and, thus, subject to the Statute of Frauds (see, e.g., Pollard v Meyer, 61 AD2d 766; Rosner v 80 CPW Apts. Corp., 73 AD2d 39; Anton Sattler, Inc. v Cummings, 103 Misc 2d 4; Sebel v Williams, 88 Misc 2d 411), the majority’s position, that traditional protections associated with the transfer of realty are inapplicable to the transfer of realty effected by stock transfer, creates uncertainty in this regard.
Accordingly, I would affirm the order of the Appellate Division denying defendant’s motion to vacate the lis pendens.
Judges Jones, Wachtler, Meyer, Simons and Kaye concur with Chief Judge Cooke; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. The remaining defendant, Bachner, Tally & Mantell, was defendants’ counsel who acted as escrow agent and is claimed to have improperly disbursed escrow funds to the other defendants. Unless otherwise specified, the term “defendants” in this opinion will not include Bachner, Tally & Mantell.

. As the reader will have noted, the statutes refer to a “notice of pendency,” in contrast to the term “lis pendens” used at common law. This distinction will be employed throughout this opinion.

. Notwithstanding the sometimes vehement disavowal of any reliance on the law of notice to explain the rule (see Bennett, Lis Pendens, § 17; 5 Tiffany, Real Property [3d ed], § 1294, p 82; see, also, Leitch v Wells, 48 NY 585; Murray v Ballou, 1 Johns Ch 566), a careful review of the decisions reveals a concern that purchasers and incumbrancers should have some opportunity to ascertain whether the transferor had clear title or use of the property at issue. The doctrine presumed that the careful grantee could examine the local court records and thereby learn of the pending suit upon reading the filed complaint, which contained a description adequate to identify the property. This solicitude for the innocent purchaser was unnecessary to protect a court’s power to execute its judgments. In formulating this equitable doctrine, the courts clearly were seeking to strike some balance between the interests of the plaintiff, the court, and the transferee (see Murray v Blatchford, 1 Wend 583, 618). As will be seen (see at pp 320-321, infra), this emphasis on the statements in the pleadings has not changed over the years.

. Lusker v Tannen (90 AD2d 118) is not to the contrary. The court there looked behind the contract to ascertain whether it was actually' intended to convey real property, but it did so only to determine whether it would be appropriate to allow an action for specific performance of a contract to sell personalty (id., at pp 124-125).

. Moreover, in a trespass action, alienation of the property would not effectively prevent the court from ultimately awarding the relief requested (Hailey v Ano, 136 NY 569, 575), which is the primary purpose of the notice of pendency.

. Plaintiff’s reliance on Lusher v Tannen (90 AD2d 118) is misplaced. That case involved a factual background substantially identical to the present appeal. There, Supreme Court canceled the notice of pendency and dismissed the complaint. The property was conveyed before the Appellate Division rule in favor of plaintiff by reinstating the complaint. Therefore, it did not reach the question whether a notice of pendency was proper under the circumstances (id., at p 125).

. We have no occasion to consider, as the dissent would invite us to do, whether the special nature of shares in cooperative apartment buildings might require a different result (cf. Lawlor v Densmore-Compton Bldg. Co., 60 Misc 555, affd no opn 133 App Div 896), and, accordingly, that issue is expressly left *324 open.
The concerns expressed by the dissent appear to be unfounded. Firstly, nothing in the Insurance Law provisions cited (Insurance Law, § 46, subd 18; § 432, subd 2) even suggest that there must be a transfer of title by deed before an interested party can obtain a title insurance policy. Secondly, whether the present transaction, had it been consummated, would have been subject to the Recording Act is not before the court, but it is noted that the very purpose of this type of business deal often is to avoid the transfer of title to realty (which would require compliance with the Recording Act) by instead transferring fc.tle to personalty. Lastly, all of the authorities cited by the dissent for the Statute of Frauds question concern cooperative apartments, which, as noted, is not the present situation.

. That a notice of pendency was permitted in a shareholder’s derivative suit (see Grossfeld v Beck, 42 AD2d 844) is irrelevant to the controversy here. Such a suit is brought on behalf of the corporation for its benefit (see 13 Fletcher, Cyclopedia of Corporations [1984 rev], § 5939), and, therefore, a notice of pendency would be proper if the suit is seeking to recover die corporation’s real property.