**Linda Feldman WEISS, Plaintiff,**

v.

**ALARD, L.L.C., Defendant.**

**No. 01 CIV. 1149 RO.**

United States District Court,
S.D. New York.

July 3, 2001.

*Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426 (S.D.N.Y.2001).

Jerome R. Halperin, The Halperin Law Firm, LLP, New York, NY, for plaintiff.

Paul D. Drobbin, David W. Phillips, St. John & Wayne, LLC, New York, NY, for defendant.

## OPINION & ORDER

OWEN, District Judge.

■ This is a contract action arising from the acquisition and renovation of a commercial property at 58 Walker Street in the Tribeca section of lower Manhattan. Plaintiff Linda Weiss, a citizen of New York, originally filed this action for specific performance of a real estate contract in New York State Supreme Court and, simultaneously, filed a Notice of Pendency [1] with the New York County Clerk pursuant to CPLR § 6501. Defendant Alard, LLC, a New Jersey real estate development company, removed the action to this Court based on diversity of citizenship and now moves to vacate the Notice of Pendency.

In early 1999, Weiss became interested in purchasing and developing 58 Walker Street into residential condominiums and obtaining a penthouse unit therein for her personal use. Weiss sought the location because it was close to a restaurant in which she has an interest called "TJA" located on the corner of Walker and Church Streets. In late March 1999, Weiss purchased 58 Walker Street from the SALA Company, a New York partnership, and made a $240,000 down payment. The project would require the renovation of the existing five floors at 58 Walker from commercial to residential space, and the addition of two floors (six and seven), which would contain two penthouse units, one a duplex and the other a triplex. At roughly the same time, in what the parties call a "flip" agreement,[2] Weiss contracted to convey the real property and building to defendant Alard for $2,400,000. The portion of this contract at issue deals with the obligations of Alard, as purchaser of 58 Walker, and the benefits Weiss would receive.

The agreement states in relevant part:

---

1. For the sake of clarity, "A notice of pendency (or 'lis pendens' as it is commonly called) is a paper [filed by a plaintiff] in a realty action ... [w]ith the county clerk of the realty county, putting the world on notice of the plaintiff's potential rights in the action and thereby warning all comers that if they then buy the realty or lend on the strength of it or otherwise rely on the defendant's right, they do so subject to whatever the action may establish as the plaintiff's right." David D. Siegel, *New York Practice* § 334, at 509 (3d ed.1999). This potent provisional remedy may be filed without judicial review and "[c]an cloud defendant's title merely by serving a summons and filing a proper complaint and notice of pendency stating the names of the parties, the object of the action, and a description of the property." *5303 Realty Corp. v. O & Y Equity Corp.,* 64 N.Y.2d 313, 319, 486 N.Y.S.2d 877, 476 N.E.2d 276 (1984) (internal citations omitted).

2. The parties utilize the term "flip" to describe this transaction where Weiss entered into a purchase agreement with SALA to acquire the real estate, made a down payment, and, subsequently, entered into a contract of sale with Alard which obligated the parties to enter into an "Assignment and Assumption of Contract of Sale," whereby Weiss became the assignor of the SALA contract and Alard the assignee.

6.5 A) Purchaser [Alard] shall pay Seller [Weiss] an amount equal to thirty three percent (33%) of the net profits from the sales of all of the Units, after deducting all costs including but not limited to acquisition, construction, conversion, marketing, interest, and other such costs .... [I]n the event, for any reason, Purchaser pursues a different plan for the Building, such as a development of a portion but not all of the Building or a sale of the Building, Seller shall, none the less, be entitled to thirty three percent (33%) of the net profits resulting from such different plan.

B) The Seller shall have the right, upon reasonable notice, to receive (a) A Unit located on the top floor of the Building ... when a plan for a Condominium is approved, if such plans are utilized and approved, at an agreed value of $925,000, or, to the extent such plans may be modified and/or revised as provided herein, a Unit of comparable size and value. The agreed value of such Unit shall be deducted from the Sellers proportionate share of the net profits, as specified in subparagraph (A) above. In the event thirty three percent (33%) of the net profits is less than nine hundred twenty-five thousand ($925,000), then, in that event, Seller may opt either not to take the Unit or to pay the difference between Seller's share of the net profits and nine hundred twenty-five thousand ($925,000) and to also pay off the Promissory Note referred to in Section 5.1 hereof. Seller may apply all or any part of her share of the net profits as set forth herein, towards the price for such Unit. Under no circumstances shall the Seller be obligated to purchase a Unit, or if purchased, to personally dwell in said Unit or to own said Unit for any specific amount of time.

The agreement also provided that Weiss would be granted a UCC Financing Statement securing the rights to 33 percent of the net profits from the condo project with a lien, but that the UCC–1 lien could not be filed unless a default occurred, or was about to occur.

Plans for 58 Walker were, however, in flux until title closed on July 6, 1999. Weiss had envisioned the use of the "Lombardi Plans" under which she claims the penthouse was approximately 2000 square feet (including 1,650 interior and an outdoor terrace of 400 square feet), but Alard ultimately decided on using drawings by David Shone. Shone made revisions to the Lombardi Plans and concluded, after discussing the matter with Alard's broker and land use attorney, that the addition of the sixth and seventh floors on the existing structure "[w]ould not be feasible in the regulatory environment, would not be readily marketable and would negatively impact the economics of the project." The building plans, as finally designed and approved, now contain five units, with each unit covering an entire floor of roughly 2,000 square feet and ranging in price—according to Alard and its broker—from $1,295,000 to $1,695,000 for the penthouse unit on the fifth floor. Alard further contends that the penthouse unit is actually worth more, that is, somewhere in the area of $1,750,000.

The Condominium Offering Memorandum was accepted for filing by the New York State Attorney General's Office in October 2000. Alard thereafter informed Weiss that, given the Shone plans for proposed renovations and development, circumstances had changed and proposed a meeting. Alard met with Weiss and explained its position that the units, as configured, were not comparable to the units

in the contract. Alard proposed that Weiss be permitted to buy any one of the units at 58 Walker she might select, but she would have to make her purchase at market value. This action followed on January 21, 2001 in New York State Supreme Court and was removed, without objection, by Alard on February 14, 2001. Simultaneously with her complaint, Weiss filed a Notice of Pendency with the County Clerk, stating in relevant part:

> NOTICE IS HEREBY given of an action now pending [in New York State Supreme Court] upon the verified complaint of ... Linda Feldman Weiss ... against ... defendant Alard, L.L.C. for *specific performance of a contract to convey to plaintiff title and possession of the top floor of the building and real property known as 58 Walker Street,* Borough of Manhattan, City, County and State of New York (Block 194, Lot No. 3 on the land and tax map of New York County) ....

Notice of Pendency, Ex. B to Pl.'s Aff. in Opp. (emphasis added). Alard contends that Valley National Bank, which had previously been financing Alard, has now withdrawn its commitment to funding the condo project unless and until the Notice of Pendency is removed in its entirety. Alard now moves to vacate the Notice of Pendency.

New York law provides that a notice of pendency may be filed "[i]n any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." CPLR § 6501; *see also* Fed.R.Civ.P. 64. "The well-known realty actions, such as mortgage, foreclosure, *specific performance,* partition, etc., easily fall within [this] category ...." David D. Siegel, *New York Practice* § 334, at 509 (3d ed.1999) (emphasis added). Weiss' complaint seeks

specific performance of the real estate contract from Alard and therefore her filing of a notice of pendency is proper. *See Whelan v. J.T.T. Contractors,* 155 A.D.2d 451, 452, 547 N.Y.S.2d 111 (2d Dep't 1989); *Freidus v. Sardelli,* 192 A.D.2d 578, 580, 595 N.Y.S.2d 981 (2d Dep't 1993).

After the filing of a notice of pendency, it is presumed that such was valid, *see Rose v. Montt Assets, Inc.,* 250 A.D.2d 451, 451, 673 N.Y.S.2d 406 (1st Dep't 1998), and may only be cancelled for one of the reasons listed in CPLR § 6514 or § 6515. Under CPLR § 6514(a), certain procedural failings make cancellation mandatory, but such failings are not present in this case. The other vehicle for cancellation, CPLR § 6514(b), is discretionary, providing that the notice of pendency may be cancelled "[i]f the plaintiff has not commenced or prosecuted the action in good faith." It should be noted, however, that "[t]he court's scope of review is circumscribed. One of the important factors in this regard is that the likelihood of success on the merits is irrelevant to determining the validity of the notice of pendency." *5303 Realty Corp. v. O & Y Equity Corp.,* 64 N.Y.2d 313, 320, 486 N.Y.S.2d 877, 476 N.E.2d 276 (1984).

Alard contends that Weiss filed her Notice of Pendency in bad faith because it "[c]overs extensive real property that is not the subject of the underlying dispute ...." Alard reaches this conclusion by pointing to the text of the Notice of Pendency and stating that it applies to the whole building, not just the portion of 58 Walker pertaining to this litigation—that is, the top floor penthouse unit. Alard's argument is wholly frivolous because the actual text explicitly makes reference to the "top floor of the building" and, additionally, utilizes the most specific numerical reference available at the time of filing

on the land and tax map of New York County.[3]

■ Alard further contends that an inference of bad faith may be drawn because Weiss has no real interest in using the premises for residential purposes. Such arguments must be rejected, not only because I am essentially bound by the allegations in the complaint (which obviously state otherwise), but because Paragraph 6.5(B) of the agreement explicitly states that Weiss is not under any obligation whatsoever "to personally dwell" in the Unit, so whether she wishes to reside there or not is irrelevant as to whether she filed the lis pendens in good faith. Further, the entirety of the record suggests that she has always been interested in residing at 58 Walker, especially since the SALA contract (properly before me as an attachment to the contract at issue and referenced in the complaint), which was obviously reviewed by Alard in connection with its purchase of 58 Walker and assumption of the agreement, contains a rider entitled "Description of Condominium Unit for Linda Feldman Weiss," which is a relatively detailed listing of the features of the proposed unit she was to receive in connection with Paragraph 6.5(B). In a similar vein, Alard notes that the Valley National Bank has withdrawn its funding of the condo project due to the filing of the lis pendens. Although this is unfortunate, the Bank's unilateral decision to do so is irrelevant as to whether Weiss filed the lis pendens in good faith, especially since Weiss has a contract with Alard for a unit at 58 Walker and, moreover, because plaintiff has voluntarily agreed to subordinate the lis pendens to the Bank's loan (an offer the Bank declined). *See, e.g., Fourth Ocean Putnam Corp. v. Suburbia Fed. Sav. & Loan Ass'n,* 124 A.D.2d 550, 552, 507 N.Y.S.2d 695 (2d Dep't 1986).[4] Given the foregoing, Weiss' filing is not in bad faith and I decline to cancel the Notice of Pendency pursuant to CPLR § 6514(b).[5]

3. Plaintiff's counsel represented to the Court at oral argument that had a particular unit number (specifying the exact condominium in 58 Walker) been available, he would have included it in addition to the building and lot number already listed on the face of the Notice of Pendency.

4. In *Fourth Ocean*, plaintiffs filed an action to set aside certain general releases of a contract on the ground that the releases were obtained under economic duress. Specifically, plaintiffs argued that the economic duress was based on defendants' "wrongful" filing of a lis pendens which caused a bank to withdraw its commitment to refinance plaintiffs' mortgage. The Second Department was unpersuaded, noting, "Whatever the ultimate validity of the agreement as a binding contract, it certainly reflects [defendants'] intention to sell the property, and the efforts to obtain specific performance of it can hardly be deemed duress that precluded the exercise of free will." *Fourth Ocean*, 124 A.D.2d at 552, 507 N.Y.S.2d 695. Similarly, Weiss was clearly in negotiations and, ultimately, did contract to obtain a unit at 58 Walker. Her efforts to seek specific performance and filing of a lis pendens cannot be said to be in bad faith merely because the Valley National Bank chose to withdraw Alard's funding.

5. I am, however, somewhat troubled by parts of the record which appear to be in conflict. Weiss' complaint, at ¶¶ 12–13, alleges that the condo unit under construction has a substantially lower value than the unit for which she had originally bargained and also that defendant breached the agreement by "[f]ailing to construct a top floor condominium unit of comparable size and value to the original top floor unit" in the contract. Defendant's argument that, given these admissions, specific performance is not an available remedy appears to be reasonable. However, based on representations of both counsel at argument and in the submissions, there is a substantial question as to whether the present units at issue are, in fact, of comparable size and value, especially given the vague nature of this language. Also, despite this facially contradictory pleading by her attorney (albeit verified by the client), the complaint *does* incorporate the SALA contract with its attach-

■■■■ Alard has, however, offered to post an undertaking to remove the Notice of Pendency. Pursuant to CPLR § 6515:

In any action other than one to foreclose a mortgage or for partition or dower, the court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, upon such terms as are just, whether or not the judgment demanded would affect specific real property, if the moving party shall give an undertaking in an amount to be fixed by the court, and if:

1. the court finds that adequate relief can be secured to the plaintiff by the giving of such undertaking; or
2. in such action, the plaintiff fails to give an undertaking, in an amount to be fixed by the court, that the plaintiff will indemnify the moving party for the damage that he may incur if the notice is not cancelled.

CPLR § 6515. "[T]he preferred course in a claim for specific performance is the utilization of subdivision 2 by cancelling the notice of pendency upon an undertaking by the defendant *unless plaintiff buyer posts an undertaking which will indemnify the*

*defendant." Andesco, Inc. v. Page*, 137 A.D.2d 349, 357, 530 N.Y.S.2d 111 (1st Dep't 1988) (emphasis added). New York courts have held that "double-bonding" is "[p]referable even when plaintiff's likelihood of success is doubtful." *Id.* Weiss has offered to post an undertaking to keep the lis pendens in place and therefore I decline to cancel the lis pendens pursuant to CPLR § 6515(2). What remains then is the amount of security each party must post.

■■■■ The amount of the respective undertakings is a matter of discretion to be informed by the pleadings, the acts of the parties and the circumstances set forth in their affidavits. *See Ronga v. Alpern*, 45 Misc.2d 1029, 1031, 258 N.Y.S.2d 731 (N.Y.Sup.1964). I may also consider the question of good faith and probability of success as revealed in the papers submitted. *See id.* Alard contends that Weiss can be adequately compensated by money damages and her UCC–1 and therefore requests that its bond be a nominal sum no greater than $5,000. Weiss, however, argues that Alard's bond should be the difference between the amount it contends the penthouse unit is worth, $1,750,000,[6]

---

ments and the aforementioned Paragraph 6.5(B), all of which clearly envision that the benefit of the bargain involved a residential unit on the top floor or a unit of comparable size and value for Weiss. On this record, I decline to elevate the pleading over the contracts attached thereto, choosing instead to reach those merits as to whether there is, in fact, a unit of comparable size and value. Counsel should be prepared to present compelling evidence on this issue either at a trial on the merits or summary judgment, and to do so with some dispatch considering that current and future financing of this project are unquestionably affected by Weiss' Notice of Pendency. I conclude that the policy reasons underlying the notice of pendency are better served by leaving it in place so that no purchaser comes down the road and acquires an interest in the top floor that might some-

how be affected by the outcome of this litigation.

6. This figure is derived from the Affidavit of Aaron Tucker, a managing member of Alard. Stribling Marketing Associates, Alard's broker, suggested a sales price for the top floor unit of $1,695,000 in November 2000. Subsequently, Tucker states, "[t]he offering price for the fifth floor unit was raised to $1,750,000 based on reassessments of the market value." Tucker notes that Alard has received several offers for the penthouse unit, "[a]ll at or exceeding the asking price of $1,750,000." Further, Alard, he says, received a "[s]igned contract from a potential buyer for the fifth floor unit at a purchase price of $1,750,000 (contingent upon Alard's ability to sell the unit)." However, Tucker states that the unit cannot be sold and/or conveyed due to the lis pendens. The parties dispute this

and the contract price of $925,000, which leaves $825,000. Alard argues that because plaintiff's Notice of Pendency has resulted in the loss of its financing from Valley National Bank and, moreover, because the lis pendens has purportedly caused difficulty in marketing the top floor unit, Weiss should post an undertaking of no less than $7,515,000, contending that such a figure will provide security for any loss on the entire investment and gross profits. Weiss, on the other hand, contends that the units have not yet been completed because renovation work is still in progress and sales are not ready to be closed. Alard's proposed undertaking of $7 million plus is, on this record, "totally disproportionate" to a realistic damage assessment in this case, especially because the renovation project is incomplete. *Ansonia Realty Co. v. Ansonia Assocs.*, 117 A.D.2d 527, 528, 498 N.Y.S.2d 141 (1st Dep't 1986). Keeping in mind that "[t]he purpose of the bond required to be posted by plaintiff is to indemnify defendant against any damages he may sustain if the notice of pendency is not cancelled," *Esposito v. FDIC*, 644 F.Supp. 276, 277 (E.D.N.Y.1986) (applying New York law), Alard's contentions regarding the unit's potential value are speculative given the status of the renovation project. As such, I conclude that the most appropriate sum for plaintiff's bond is the difference between Alard's stated value of the unit ($1,750,000) and the contract price ($925,000), which is $825,000. The undertaking to be posted by the defendant Alard is the prima facie benefit of the bargain, that is $925,000.

Accordingly, defendant is to post an undertaking of $925,000 within twenty (20) days from the date of this order, and if defendant fails to post said undertaking, plaintiff need not deposit any security and the lis pendens is to remain in place. Assuming, however, defendant posts its undertaking, plaintiff is thereafter to post an undertaking in the amount of $825,000 within ten (10) days. However, if plaintiff fails to post said bond, the Notice of Pendency is cancelled in accordance with CPLR § 6515.

So ordered.

legal proposition (with plaintiff contending that the lis pendens does not prevent a transfer of property), but I need not resolve this issue given that the question for me, at this point, is the amount of the respective undertakings.