*910 OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant, Antetomaso & Micca Group, LLC, has moved for an order pursuant to CPLR 6514 canceling the notice of pendency, or in the alternative, setting an amount for an undertaking at $100,000 for the cancellation of the notice of pendency pursuant to CPLR 6515. Plaintiff opposes the cancellation of the notice of pendency, or in the alternative, seeks an undertaking in the amount of $334,000.
This dispute stems from a contract for the purchase and sale of the Mayer Farms subdivision in the Town of Penfield. By contract dated January 25, 2001, defendant offered to purchase from Camelot Development, LLC a tract containing 47 residential building lots, and in addition, an option to purchase an additional 114 residential building lots, for a purchase price of $1,670,000. Defendant admits in its answer that John Micca signed the offer as agent for an entity to be formed (the entity subsequently formed was defendant Antetomaso & Micca Group, LLC, as admitted by defendant in its answer). Camelot accepted defendant’s offer by way of a written acceptance dated January 30, 2001, signed by Michael D’Amico as president of Camelot Development, LLC. In addition, an “Addendum to Land Contract” was executed on the same day, January 30, 2001, by John Micca as agent for the entity to be formed and by D’Amico as president of Henrietta Piping, Inc. In other words, the seller of the property, Camelot, was not a party to the addendum. D’Amico, however, was the solé member of Camelot Development, LLC, which was dissolved two years later, in September 2003, by the filing of articles of dissolution with the New York State Department of State. D’Amico also is the sole shareholder and president of Henrietta Piping, Inc. The addendum provided that Henrietta Piping would perform future site development at all sections of the Mayer Farm property and it set forth two different methods of calculating the price of future site development. Plaintiffs also allege that, prior to January 25, 2001, Henrietta Piping performed site development work on a portion of the building lots, which involved earthmoving and the stripping and stockpiling of dirt, at the cost of approximately $40,000.
The purchase of the premises from Camelot was to be financed by a bank loan (admitted by defendant in its answer). Plaintiffs allege that Camelot’s asking price for the premises was originally intended to include the $40,000 owed for past site work, but that it exceeded the bank’s allowable lot cost to *911 obtain financing. To consummate the transaction, defendant had to reduce the total amount of money paid to Camelot for the premises in order to obtain financing. To accomplish this, plaintiffs allege that defendant orally promised Camelot that, after closing, defendant would pay Henrietta Piping the $40,000 it was owed for the site development it had already performed. In addition, plaintiffs allege that Camelot agreed to further reduce the purchase price for the premises in consideration of defendant’s written agreement to hire Henrietta Piping to perform all future site development work.
The premises were conveyed by a warranty deed dated May 4, 2001, between Camelot as grantor and Antetomaso as grantee, which was duly recorded at the Monroe County Clerk’s office on May 8, 2001, and was later corrected by a correction warranty deed executed by the same parties dated November 15, 2001, and recorded December 26, 2001. The purchase price for the premises was $1,670,000 (admitted by defendant in its answer). There is no indication that any of the above-described arrangements between the parties, oral and written, were set forth in the deed, either by way of condition subsequent or otherwise. At closing, Camelot was paid in full for the property. Defendant has since made substantial improvements on the property, has built and sold numerous homes on the tract, and currently has a number of contracts to build homes on the property. Henrietta Piping was hired by defendant in connection with the improvements constructed during the first phase, in 2001, but disagreements arose concerning the completeness and quality of its work, as revealed in the counterclaims, and it was not hired for the upcoming phase of the overall development.
Plaintiffs allege generally that defendant breached that portion of it’s overall agreement which provided for Henrietta Piping to furnish all future site development work. Plaintiffs assert four causes of action against defendant: (1) fraud in the inducement, seeking $40,000 for the work performed preclosing, (2) breach of the addendum contract seeking $60,000 relating to work done postconveyance during the summer of 2001, (3) rescission of the entire transaction, and (4) quantum meruit. Defendant counterclaims for damages as a result of plaintiff’s incomplete and faulty work at the premises during the first phase of the development in 2001.
In its first cause of action, plaintiffs allege that defendant fraudulently induced Camelot to enter into the purchase and sale contract when defendant orally promised to Camelot that it *912 would pay Henrietta Piping the $40,000 for the site development work already performed. In its second cause of action, plaintiffs allege that defendant breached the purchase and sale contract, and that Henrietta Piping has been damaged. In its third cause of action, plaintiffs allege that defendant’s breach of the purchase and sale agreement was “material and willful, or so substantial and fundamental as to strongly tend to defeat the object of the parties in making the agreement,” and that “Camelot does not have an adequate remedy at law because the object of the parties was defeated when defendant breached the Purchase and Sale Agreement.” (Amended verified complaint 1HI 48, 49.) Finally, in its fourth cause of action, plaintiffs seek recovery based on quantum meruit and allege that defendant has been unjustly enriched by its receipt of the improved property without paying Henrietta Piping the fair and reasonable value of the site work performed by Henrietta at a cost of $40,000.
Discussion
CPLR 6501 states in pertinent part: “A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property . . . .” The notice of pendency is “considered an extraordinary privilege, and the litigant must strictly comply with the statutory requirements.” (Rose v Montt Assets, 250 AD2d 451, 452 [1st Dept 1998], citing 5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313, 320 [1984].) CPLR 6514 provides for mandatory and discretionary cancellation of a notice of pendency upon motion by an aggrieved party. (See CPLR 6514 [a], [b].)
In addition, “[c]ancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR 6501.” (Nastasi v Nastasi, 26 AD3d 32, 36 [2d Dept 2005], citing 5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313, 320-321 [1984]; see Rose v Montt Assets, 250 AD2d 451 [1st Dept 1998].) When the court exercises its inherent power to determine if the pleading complies with CPLR 6501 on a motion to cancel a notice of pendency, the court does not assess the likelihood of success on the merits nor does it consider material beyond the pleading itself; “the court’s analysis is to be limited to the pleading’s face.” (Nastasi v Nastasi, 26 AD3d at 36, quoting 5303 Realty Corp. v O & Y Equity Corp., 64 NY2d at 321; see Matter of Sakow, 97 NY2d 436, 441 *913 [2002].) On the other hand, the demands made in the prayers for relief are not, alone, determinative. (5303 Realty Corp. v O & Y Equity Corp., 64 NY2d at 323 [“Although the prayer for relief seeks a transfer of title, the court must examine the complaint in its entirety”].) As well stated in Richards v Chuba (195 Misc 732, 735 [Sup Ct, Rensselaer County 1949]):
“An examination of the allegations of the complaint herein fails to show that the action is one to recover a judgment affecting the title to, or the possession, use or enjoyment of real property. It sets forth a cause of action at law for money damages and for fraud arising out of a breach of contract. It is true the prayer for relief as prayed for in the defendants’ cross motion demands relief by the impression of an equitable lien and foreclosure. But it has been held that ‘It is not the title of the action nor the prayer for judgment but the facts set out in the complaint which determine the kind and character of action. The action cannot be made an equitable one by the demand for relief if no facts are stated in the complaint which would justify equitable relief.’ (Sayer v. Wilstrop, 200 App. Div. 364, 371; Brox v. Riker, 56 App. Div. 388; Behrens v. Sturges, 121 App. Div. 746.)”
Accordingly, it must be determined whether the amended verified complaint states a cause of action that complies with CPLR 6501, namely, whether the cause of action “affect[s]” real property.
Here, plaintiff asserts it is entitled to rescission of the purchase agreement, and restitution in specie of the property conveyed, based upon fraud and defendant’s breaches of a contemporaneous oral contract and an attached written addendum. Insofar as the claims concern alleged fraud after execution of the purchase agreement and conveyance, they do not state claims within CPLR 6501. As in Tsilogiannis v 53-11 90th St. Assoc. (293 AD2d 468 [2d Dept 2002]), such a claim quickly is dispatched:
“The only claim of the plaintiff for which ‘the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property’ (CPLR 6501) is that of fraud in the inducement to enter the contract, found in the third cause of action of the complaint. That cause of action, however, is insufficient on its face because the alleged fraud is *914 premised upon the breach of a duty arising under a contract. ‘A cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract’ (WIT Holding Corp. v Klein, 282 AD2d 527, 528; see Rubinberg v Correia Designs, 262 AD2d 474; Non-Linear Trading Co. v Braddis Assoc., 243 AD2d 107). The plaintiff did not plead facts or circumstances showing that the defendants breached a duty independent of the duty imposed upon them by the parties’ contract, and therefore, the claim lies in breach of contract rather than fraud (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382; Rubinberg v Correia Designs, supra).” (Id. at 468-469.)
Here, the only fraud alleged relates to defendant’s alleged breach of the oral contract to pay for the preclosing site work, and its alleged breach of the addendum contract relating to postclosing site work. Accordingly, the only cause of action in the complaint which might support rescission of the property sale, the fraud in the inducement claim, is insufficient on its face.
The analysis is more complicated if the complaint is read to encompass preconveyance fraud. Crediting as I must the allegation that defendant had no intention to fulfill either contract at the time it made the contracts, and only made the contracts to induce the seller to execute the deed, and that therefore rescission of the transaction might in the ordinary case be properly ordered (Michel v Halheimer, 10 NYS 489 [Sup Ct, Gen Term, 2d Dept 1890]; 5 Corbin, Contracts § 1120, at 639-647 [1964]), this is not a case in which specific restitution of the property may be ordered upon rescission. At this late date, over five years after the conveyance, when portions of the property have been developed and sold to third parties (with plaintiffs assistance pursuant to the addendum), other portions are in the process of being developed and sold, with moneys lent to aid the process, and where it is undisputed that contracts are in place for still other portions of the tract to be developed and sold, the parties cannot be restored to their original positions, whether by a combination of partition and restitution damages or otherwise (plaintiffs’ counsel consented at oral argument to partitioning the already completed development, leaving it untouched by the litigation). (Merry Realty Co. v Shamokin & Hollis Real Estate Co., 230 NY 316, 323 [1921] [“If rescission is the remedy selected it must be in whole and not in part”].) This conclusion *915 is only reinforced when one considers, as the court must, that plaintiff was hired to perform services in accordance with the addendum for the first phase of the development, and undertook to work at the site notwithstanding not having been paid the $40,000 for the preclosing work. (See Hammond v Pennock, 61 NY 145 [1874].)*
In Merry Realty, the Court stated that, upon successful proof of its fraud claim, “defendant may have full rescission and get its lots back, or if this is impossible owing to changed circumstances or is inequitable for any reason, then it may have full and complete damages.” (230 NY at 325 [emphasis supplied].) Stated another way, changed “circumstances do not bar the equitable remedy of rescission for wrong done. The terms upon which rescission may be granted where complete restoration of the parties to their former position is impossible rests in the sound discretion of the courts.” (Buffalo Bldrs. Supply Co. v Reeb, 247 NY 170, 176 [1928].) But sound discretion does not permit in these circumstances a reconveyance back to plaintiff of the property. This much is established by the celebrated case of Chicago, Tex. & Mexican Cent. Ry. Co. v Titterington (84 Tex 218, 222-223, 19 SW 472, 473-474 [1892]) discussed at length in 1 G. Palmer, Restitution § 4.19 (at 530 [“promise to maintain the station was without time limit, and it would be unwise for a court to hold that the grantee held a title which was subject to forfeiture should it fail to maintain the station at any time in the future”], 533-535 [1978] [“in the Titterington case discussed above, where land was deeded to a railroad in return for its promise to build and maintain a station, there would be undeniable difficulty in proving damages for the breach, yet this does not justify leaving the grantee with an uncertain title for an indefinite period of time”]).
“Another factor argu[ing] against cancellation of the deed in the Titterington case ... [is that, where the grantee has taken possession and operated at *916 the site for years,] a decree ordering cancellation would provide the grantor with an instrument of coercion, much as does the issuance of an injunction in cases in which the decree leaves the defendant little choice except to pay the plaintiff for his interest at a price that may be exorbitant.” (1 G. Palmer, Restitution § 4.19, at 534 n 25 [1978].)
The disparity in price alone between plaintiff’s bid and the Monroe roadways’ bid might be seen to prove the point, but of course I am disabled on a motion such as this from examining the underlying transaction. The point is that, in cases of this sort, and Titterington, which proceeded on the assumption that fraud induced the conveyance, “most courts have refused specific restitution in favor of the vendor, regardless of the seriousness of the breach,” because “such relief would interfere unduly with the certainty of titles to land.” (Id. at 528-529 [collecting cases]; accord Restatement [Second] of Contracts § 372 [1] [a]; Comment b [“a court may refuse specific restitution if it would unduly interfere with the certainty of title to the land . . . (or) if it would otherwise cause injustice as where, for example, it would result in a preference over other creditors in bankruptcy”]; Restatement [Third] of Restitution & Unjust Enrichment [Tentative Draft No. 3] § 37 [2] [c]; Comment f [“(r)escission is uniformly denied” in such cases]; Illustration 15 [based on Titterington].) It is true that, without the factors of transfers to third parties, postconveyance interposition of creditor rights, passage of time, and the necessity of partition, specific restitution would be available, even if legal remedies might be adequate, that is if this case were to be decided under the formula of Restatement (Second) of Contracts. (Restatement [Second] of Contracts § 372, Comment a [“right to specific restitution may, however, be subject to rights of third parties”]; § 376.) The cited sections of the Second Restatement were designed to avoid the inadequacy criterion of the First Restatement (§ 354), which were said not to be consonant with case law. (1 G. Palmer, Restitution § 4.7, at 429 [1978].) But they do not create a new right to specific restitution in the circumstances of this case; the Second Restatement still remains faithful to the Titterington rule (Restatement [Second] of Contracts § 372, Illustrations 2, 3; Reporter’s Note [citing 1 G. Palmer, Restitution § 4.19 (1978)]), and thus this action does not affect real property within the meaning of CPLR 6501, even under the revised formula of the Second Restatement.
But it is not clear that the New York Court of Appeals fully embraces the Second Restatement’s abrogation of the inade *917 quacy requirement in this context. The equitable remedy of rescission is often said in the New York cases to be available only where a party lacks a “complete and adequate remedy at law and where the status quo may be substantially restored.” (Alper v Seavey, 9 AD3d 263, 264 [1st Dept 2004], quoting Rudman v Cowles Communications, 30 NY2d 1, 13 [1972].) On the other hand, “[t]he rule that rescission is unavailable where a party cannot be returned to the status quo ante will not be strictly enforced where the party against whom rescission is sought is a wrongdoer who is exploiting its change of position to shield its wrongdoing (Butler v Prentiss, 158 NY 49).” (Sokolow, Dunaud, Mercadier & Carreras v Lacher, 299 AD2d 64, 72 [1st Dept 2002].) This rule is traced back to the case of Hammond v Pennock (61 NY 145 [1874]), discussed in the footnote above (at 915).
Whether plaintiff may bring itself within the application of the latter rule is a question that must, on these facts, be answered in the negative. It was not defendant alone that created the changed circumstances; indeed defendant performed for a time and plaintiff was hired during the first phase of the project with full knowledge that it had not been paid the sums which are the subject of the first cause of action sounding in fraud. (Hammond v Pennock, discussed in the footnote above.) But the transfer to third parties, the necessity of partition, the effect rescission would have on creditor and title rights, and the long passage of time since the conveyance, plaintiffs part performance of the addendum in the prior postconveyance phase of the development (see n above), all militate against the operation of the Butler v Prentiss rule in this case. Thus, to the extent New York law varies from the formula of the Second Restatement, this favors defendant on this motion; an adequate remedy at law is assuredly available in these circumstances, especially if plaintiff is awarded “restitution of the value of the land” (1 G. Palmer, Restitution § 4.6A, at 429 [2006 Supp No. 2]; § 4.19, at 534-535, 536-537 [1978]), less any appropriate adjustments and credits.
Conclusion
Defendant’s motion to cancel the notice of pendency is granted. This renders academic the question of an undertaking or bond.

 Wherein it was stated:
“No one, perhaps, has stated this qualification more satisfactorily than the late Judge BEARDSLEY, in Masson v. Bovet (1 Denio, 69); he there said: ‘If a party defrauded would disaffirm the contract, he must do so at the earliest practicable moment after the discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject-matter of the contract and afterward rescind it.’ ” (Hammond v Pennock, 61 NY at 153 [emphasis supplied].)