OPINION OF THE COURT
 

 Wesley, J.
 

 The narrow issue presented on this appeal arises in the context of a long-standing sibling dispute over the assets of their father’s estate. When Max Sakow died on January 30, 1956, he either owned outright or had interests in a number of parcels of real estate. He was survived by his wife, Rose, now deceased, and three children — Walter Sakow, Diana Sakow and Evelyn Sakow Breslaw. At the time of their father’s death Diana was 15 years old, Evelyn was 20 and Walter was 25.
 
 *438
 
 Unbeknownst to his daughters, Max Sakow’s will left one third of his estate to his wife and two thirds to the children, with the shares to his daughters to be held in trust until they reached the age of 23.
 

 Rose Sakow received letters testamentary pursuant to a decree entered on March 5, 1956; however, the trusts were never formed and her daughters did not receive any distribution from the estate. According to Mrs. Sakow, she left all business decisions with respect to the estate to her son and signed any document he presented. Walter Sakow apparently enjoyed unfettered discretion in controlling the. estate properties for the next several decades, arranging the sale of some parcels and gaining either an outright or partial ownership interest in others.
 

 In the early 1980s Diana Sakow and Evelyn Breslaw learned of the will and its contents, and in 1984 instituted a compulsory accounting procedure against their mother and brother. The sisters claimed fraud, breach of fiduciary duty and unjust enrichment. Notices of pendency were filed in 1987, and renewed by court order dated February 26, 1990, against nine properties (16 lots) in Bronx County (Bronx properties) and several additional properties (additional properties) in other New York counties that were allegedly owned by Max Sakow at the time of his death and are presently held by either Walter Sakow or his nominees.
 

 During the liability phase of the ensuing bifurcated trial the Surrogate on March 18, 1994 dismissed all of the sisters’ claims relevant here and authorized the removal of the notices of pendency. The record indicates that the sisters did not renew the notices prior to their statutory expiration on February 26, 1993, nearly 13 months before the Surrogate’s decision. The sisters appealed to the Appellate Division, which modified the Surrogate’s order and held that their claims were not time barred and that Walter Sakow was responsible for an accounting as the de facto executor of the estate (219 AD2d 479). The Appellate Division made no reference to the effect of its order on the notices.
 

 Shortly thereafter, the sisters moved to obtain notices of pendency or, in the alternative, orders of attachment against the Bronx properties and several additional properties. In 1996 the Surrogate granted the application to reinstate notices of pendency only as to the Bronx properties, and reserved on the additional properties. Despite this ruling favorable to the
 
 *439
 
 sisters’ interests they never entered an order
 
 (see
 
 22 NYCRR 207.37 [b]) or filed notices of pendency.
 

 In 1999 the sisters again moved for the appointment of a temporary receiver to operate and control the Bronx properties and permission to renew and/or file notices of pendency with regard to both the Bronx properties and 11 additional properties (16 lots). The Surrogate ordered the appointment of a temporary receiver for the Bronx properties, and granted the application to file notices of pendency as to the Bronx properties and additional properties. The Surrogate reasoned that the strict procedural requirements for extension of a notice of pendency beyond the three-year term granted by CPLR 6513 applied only to insuring continuous effect for a notice of pendency. In the court’s view, nothing prevented it from entering an order permitting the filing of notices of pendency to take effect only from the date the new order is entered.
 

 The Appellate Division agreed with the Surrogate’s decision to appoint a temporary receiver for the Bronx properties, but modified the order by denying the motion to file notices of pendency on all of the properties.
 
 [1]
 
 The Court reasoned that because the notices had been vacated or expired without timely renewal, the sisters should not have been permitted to file new notices with respect to those properties.
 
 [2]
 
 The Appellate Division granted leave to this Court on a certified question.
 

 Does CPLR 6513 permit a plaintiff to file a notice of pendency after a previously filed notice of pendency concerning the same causes of action or claims has expired without timely renewal? The statutory language of CPLR article 65, its legislative history and underlying policies all clearly indicate that the answer is no.
 

 
 *440
 
 Article 65 of the CPLR sets forth the authority and procedural requirements for securing a notice of pendency.
 
 [3]
 
 Once the notice has been properly filed with the county clerk where the property is situated
 
 (see
 
 CPLR 6511), it puts the “world on notice of the plaintiff’s potential rights in the action and thereby warn[s] all comers that if they then buy the realty or lend on the strength of it or otherwise rely on the defendant’s right, they do so subject to whatever the action may establish as the plaintiffs right” (Siegel, New York Practice § 334, at 509 [3d ed];
 
 see also
 
 CPLR 6501). This provisional remedy authorized by the Legislature “evolved from the common-law doctrine of
 
 lis
 
 pendens”
 
 (5303 Realty Corp. v O & Y Equity Corp.,
 
 64 NY2d 313, 318 [1984]).
 

 The lineage of the lis pendens dates back to rule 12 of Lord Chancellor Bacon’s Ordinances for the Government of the Courts of Chancery in 1618, and includes its formal recognition in New York in 1815
 
 (see 5303 Realty Corp.,
 
 64 NY2d, at 318 [citing
 
 Murray v Blatchford,
 
 1 Wend 583, 594 (1828);
 
 Murray v Ballou,
 
 1 Johns Ch 566 (1815)]). “The purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit”
 
 (5303 Realty Corp.,
 
 64 NY2d, at 319). At common law, the lis pendens attached immediately upon service of process, encumbering the property without any further action required by the plaintiff
 
 (see
 
 13 Weinstein-Korn-Miller, NY Civ Prac 6501.01 [2000]). In effect, the lis pendens impaired the marketability of real property without regard to disclosure of the interest created by the litigation. Thus, a search of all court records was required to determine whether real property in which a purchaser or encumbrancer sought an interest was the subject of pending litigation. The cumbersome record search was “increasingly seen as an intolerable burden upon the transfer of real property”
 
 (id.). No
 
 showing of merit was necessary for the lis pendens to attach.
 

 In light of this troubling restraint on alienation of real property, the common-law lis pendens doctrine was replaced in most states by statutes requiring the filing of a notice of pendency before a would-be purchaser or encumbrancer would be charged with notice of the prior interest
 
 (see id.
 
 at 6501.02).
 
 *441
 
 This substantially reduced the harshness of the common-law rule because the “notice of pendency was filed with the records pertaining to the real property itself, and third persons were charged with knowledge only of what appeared in those records”
 
 (id.; see also 5303 Realty Corp.,
 
 64 NY2d, at 319). The statutory filing requirement first appeared in New York in 1823
 
 (see
 
 L 1823, ch 182, § 11), and continues in its current statutory expression in CPLR article 65
 
 (see
 
 CPLR 6501, 6511).
 

 The statute was “designed with a view toward balancing the interests of the claimant in the preservation of the status quo against the equally legitimate interests of the property owner in the marketability of his title”
 
 (Da Silva v Musso,
 
 76 NY2d 436, 442 [1990]). Indeed, we have referred to a litigant’s ability to file a notice of pendency as an “extraordinary” privilege because of the relative ease by which it can be obtained and its powerful effect on the alienability of real property
 
 (see Israel-son v Bradley,
 
 308 NY 511, 516 [1955]). The notice of pendency is a unique provisional remedy, in that “the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review”
 
 (5303 Realty Corp.,
 
 64 NY2d, at 320). Critically, the filing of a notice of pendency requires no showing of the likelihood of success on the merits of the cause of action. Thus, “a plaintiff can cloud a defendant’s title merely by serving a summons and filing a proper complaint and notice of pendency stating the names of the parties, the object of the action, and a description of the property”
 
 (id.
 
 at 319).
 

 “To counterbalance the ease with which a party may hinder another’s right to transfer property, this court has required strict compliance with the statutory procedural requirements [of CPLR article 65]”
 
 (id.
 
 at 320). We have noted that “[p]roper administration of the law * * * requires promptness on the part of a litigant so favored and that he accept the shield which has been given him upon the terms imposed, and that he not be permitted to so use the privilege granted that it becomes a sword usable against the owner or possessor of realty. If the terms imposed are not met, the privilege is at an end”
 
 (Israel-son,
 
 308 NY, at 516).
 

 The ability to file a notice of pendency is “a privilege that can be lost if abused” (Siegel, New York Practice § 336, at 512). Thus, in
 
 Israelson
 
 (308 NY 511), we held that a plaintiff who had filed a notice of pendency in a County Court action that was cancelled for want of summons service, could not file another notice of pendency for the same cause of action in
 
 *442
 
 Supreme Court. Several other courts in New' York have held that successive filings are not permitted after a notice of pendency has been cancelled
 
 (see Slutsky v Blooming Grove Inn,
 
 147 AD2d 208, 212 [1989];
 
 Holiday Invs. Corp. v Breger & Co.,
 
 112 AD2d 979 [1985]).
 
 [4]
 
 With these principles in hand, we turn to the effect of the expiration of the three-year “life” of a notice of pendency set forth in CPLR 6513.
 

 A notice of pendency is valid for three years from the date of filing and may be extended for additional three-year periods upon a showing of good cause
 
 (see
 
 CPLR 6513).
 
 [5]
 
 The extension, however, must be requested prior to the expiration of the prior notice
 
 (see id.).
 
 This is an exacting rule; a “notice of pendency that has expired without extension is a nullity” (13 Weinstein-Korn-Miller, NY Civ Prac 6513.04 [2000];
 
 see Polish Natl. Alliance of Brooklyn v White Eagle Hall Co.,
 
 98 AD2d 400, 405 [1983];
 
 Robbins v Goldstein,
 
 32 AD2d 1047 [1969]). For practical purposes, there is no distinction between the effect of an expired or cancelled notice of pendency — both are void. Thus, the “no second chance” rule we established in
 
 Israelson
 
 for a cancelled notice of pendency applies with equal force to one that has expired. Because CPLR 6513 provides that a notice of pendency terminates automatically on the expiration of the three-year period unless extended, a lapsed notice of pendency may not be revived
 
 (see Robbins v Goldstein,
 
 32 AD2d 1047;
 
 In re Kodo Props.,
 
 63 BR 588, 590 [1986];
 
 Carvel-Dari Freeze Stores v Lukon,
 
 219 NYS2d 716 [1961]).
 

 The legislative history of the predecessor to CPLR 6513, section 121-a of the Civil Practice Act supports our view
 
 (see
 
 L 1957, ch 877, § 2). Section 121-a was enacted upon the recommendation that a three-year period should be established in the statute “in recognition of the desirability of minimizing the longevity of clouds on title and the desirability of transfers of
 
 *443
 
 property free from unnecessary encumbrances” (Second Ann Rep of NY Jud Conference 114, 116 [1957]). Much like the filing requirements in CPLR article 65, the time limit was specifically designed to offset the harshness of the common-law lis pendens doctrine.
 

 Filing another notice of pendency after the previous notice has expired or been cancelled renders the time limit in CPLR 6513 useless and undercuts an important incentive for diligent practice. We prefer the certainty of the “no second chance rule,” as it preserves the delicate balance between “the interests of the claimant in the preservation of the status quo against the equally legitimate interests of the property owner in the marketability of his title”
 
 (Da Silva v Musso,
 
 76 NY2d 436, 442). Thus, we hold that an expired or cancelled notice of pendency may not be refiled on the same cause of action or claim.
 

 Here, the Appellate Division was correct in its determination that the sisters cannot file new notices of pendency as to the Bronx properties and additional properties. Filed in 1987, these notices of pendency were last renewed by court order dated February 26, 1990. Nothing in the record indicates a subsequent renewal of the notices of pendency. Thus, because the notices were not renewed within the three-year period established by CPLR 6513, the notices expired and could not be filed again as to this same action.
 

 Although the sisters did not obtain a stay under CPLR 5519 of the Surrogate’s March 18,1994 decision striking the notices, we are hard pressed to see that the stay would have mandated a different result. The Appellate Division in modifying the Surrogate’s order did not address the continued vitality of the notices nor does the record reflect that those notices had been renewed pursuant to CPLR 6513 prior to the Surrogate’s decision — over four years after the notices had been last renewed.
 
 [6]
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.
 

 
 *444
 
 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order affirmed, etc.
 

 [1]
 

 . At the Appellate Division, respondents Harriet Sillen, Baje Realty Corp. and 504-11th Street Corp. opposed the filing of notices of pendency as to four of the “additional properties” located in New York County and Kings County. According to these respondents and respondent Walter Sakow, a joint brief was submitted here on their behalf because the issues of law raised on this appeal apply with equal force to all respondents. Thus, our analysis makes no distinction between the interests of Walter Sakow and the additional respondents.
 

 [2]
 

 . There simply is no way to determine on this record if any of the “additional properties” had been the subject of earlier notices of pendency. The sisters do not contend on this appeal that they should have been allowed to file notices against those parcels because they had never been previously so encumbered. Our ruling should not be construed to prevent the sisters from filing notices of pendency on previously unencumbered properties.
 

 [3]
 

 . CPLR 6501 provides that “[a] notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property.”
 

 [4]
 

 . This rule has been referred to by one California court as New York’s “Doctrine of No Second. Chance” (see
 
 Ranchito Ownership Co. v Superior Ct. of Los Angeles County,
 
 130 Cal App 3d 764, 772, 182 Cal Rptr 54, 57-58 [1982] [citing
 
 Israelson,
 
 308 NY 511]). The Supreme Court of Nevada has also noted that “New York * * * recognizes that once a notice of lis pendens is cancelled a new one cannot be filed upon the same property and same cause of action”
 
 (Coury v Tran,
 
 111 Nev 652, 656, 895 P2d 650, 652 [1995]).
 

 [5]
 

 . Respondents do not contend that the statute permits only one extension
 
 (see
 
 Siegel, New York Practice § 334, at 510 [a notice of pendency “can be extended for like periods, but each extension must be applied for within the prior three-year period so that any extension order can be filed and indexed before the existing notice expires”]).
 

 [6]
 

 . We have no occasion to address the effects of the sisters’ successful but abandoned 1996 motion (see 22 NYCRR 207.37 [b]) because the filing of previously expired or cancelled notices of pendency authorized by that order should not have been permitted. We also note that our ruling has no effect on the Surrogate’s appointment of a temporary receiver for the Bronx properties, affirmed by the Appellate Division.