Diaz v. Paterson; Diamond v. Paterson

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: April 1, 2008        Decided: October 17, 2008)

Docket Nos. 05-2685-cv, 06-3942-cv(L), 06-3992-cv(con)

- - - - - - - - - - - - - - - - - - - - - -X

OSCAR DIAZ,

                    Plaintiff-Appellant,

          - v.-

DAVID PATERSON,[*] individually and in his
official capacity as Governor of the
State of New York, ANDREW CUOMO,
individually and in his official
capacity as Attorney General of the
State of New York, THOMAS P. DI NAPOLI,
individually and in his official
capacity as Comptroller of the State of
New York, HECTOR DIAZ, individually and
in his official capacity as Clerk of
the County of the Bronx, and on behalf
of a defendant class of New York County
Clerks and CHURCHILL MORTGAGE
INVESTMENT CORPORATION,

                    Defendants-Appellees.

---

[*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Governor David Paterson is automatically
substituted for former Governor Eliot Spitzer as the
defendant in these cases.

- - - - - - - - - - - - - - - - - - - X

JEHED DIAMOND and JOSEPH BETESH, on
behalf of themselves and all others
similarly situated,

         Plaintiffs-Appellants,

     - v.-

DAVID PATERSON, individually and in his
official capacity as Governor of the
State of New York, ANDREW CUOMO,
individually and in his official
capacity as Attorney General of the
State of New York, THOMAS P. DI NAPOLI,
individually and in his official
capacity as Comptroller of the State of
New York, GLORIA D'AMICO and SHARON A.
O'DELL, individually and in their
official capacity as Clerk of the
County of Queens and as Clerk of
Delaware County respectively, and on
behalf of a defendant class of New York
County Clerks, CHRISTOPHER JONES and
ABRAHAM BETESH,

         Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - X

    Before:  JACOBS, Chief Judge, KEARSE and POOLER,
            Circuit Judges.

Appeals from final judgments dismissing, as a matter of

law, putative class actions alleging that New York's lis

pendens law offends constitutional due process and equal

protection guarantees.  Affirmed.

2

JANET BENSHOOF (Toby Golick, Cardozo Bet Tzedek Legal Services, on the brief), New York, New York, for Plaintiffs-Appellants.

BENJAMIN ROSENBERG, Chief Trial Counsel (Barbara D. Underwood, Solicitor General, Michael S. Belohlavek, Senior Counsel, on the brief), for Andrew M. Cuomo, Attorney General of the State of New York, New York, New York, for Defendants-Appellees.

DENNIS JACOBS, Chief Judge:

These putative class actions challenge the constitutionality of the New York law, codified at N.Y. Civil Practice Law & Rules 6501-6516 ("Article 65"), that allows a plaintiff who brings a lawsuit claiming interest in real property to file a lis pendens with respect to the property. The lis pendens (also called a "notice of pendency") alerts future buyers or interest holders of a prior claim. Plaintiffs argue, under Connecticut v. Doehr, 501 U.S. 1 (1991), that because the law does not give the property owner prior notice or opportunity to be heard, it violates the Fourteenth Amendment's Due Process Clause. Plaintiffs also challenge the law under the Equal Protection Clause.

These appeals are taken from final judgments, entered

3

on April 28, 2005 and February 14, 2007, in the United States District Court for the Southern District of New York (Stein, J.), dismissing the actions for failure to state a claim. Appeal is also taken from the denial of class certification. We affirm because New York's lis pendens law as applied to plaintiffs does not offend the Constitution, as construed by Doehr.

I

Under the common law, the pendency of a lawsuit (a lis pendens) claiming an interest in real property constituted constructive notice of the claim to the world. Whether or not good faith purchasers had actual notice, they took the property subject to the outcome of the action if they acquired the property while the suit was pending. See generally 13 Jack B. Weinstein, et al., New York Civil Practice: CPLR ¶ 6501.01, at 65-4-4.1 (2008). This "prevent[ed] a defendant from destroying the value of a judgment in the plaintiff's favor by conveying the disputed property during the suit," id. at 65-5, and "assure[d] that a court retained its ability to effect justice by preserving its power over the property," 5303 Realty Corp. v. O & Y

4

Equity Corp., 64 N.Y.2d 313, 319, 476 N.E.2d 276, 280 (1984), quoted in In re Sakow, 97 N.Y.2d 436, 440, 767 N.E.2d 666, 669 (2002).  Common law lis pendens attached immediately upon service of process; no separate notice or filing was required.  "A potential purchaser of real property was required to search all of the court records to determine whether the land to be purchased or encumbered was the subject of pending litigation."  13 Weinstein, New York Civil Practice: CPLR ¶ 6501.01, at 65-5.

To mitigate the burden imposed by the common law, New York, like most states, replaced it by statute.  The New York lis pendens statute was first enacted in 1823.  The current version, codified in Article 65, provides that a plaintiff in an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of real property," may file a notice of pendency with respect to the real property that is the subject of the action.  See N.Y. C.P.L.R. 6501.  Filing of the notice of pendency effects constructive notice of the action: "A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party."  Id.

5

A notice of pendency must be filed "in the office of the clerk of any county where property affected is situated." Id. 6511(a). A complaint that states a legally sufficient claim affecting the real property must be filed with the notice of pendency, unless the complaint was filed previously. Id. 6501, 6511(a). Effectiveness of the notice is conditional on the service of a summons on the defendant property owner within 30 days. Id. 6512. The notice is valid for three years, and may be extended for an additional three years upon a showing of good cause prior to expiration of the initial term. Id. 6513. As at common law, "[t]he notice of pendency does not itself actually restrain transfer of the property, as an incumbrance or a lien: it merely provides notice that an action is pending that may affect title to the property." 13 Weinstein, New York Civil Practice: CPLR ¶ 6501.11, at 65-24.

Cancellation of a notice of pendency is available under two sections of the statute. Upon motion of "any person aggrieved," section 6514 provides for discretionary cancellation "if the plaintiff has not commenced or prosecuted the action in good faith," and for mandatory cancellation for specified failures to advance the

6

underlying action, pursuant to a stipulation, or upon final disposition of the underlying lawsuit. N.Y. C.P.L.R. 6514(a),(b),(d). An order cancelling a notice of pendency may direct the party who filed the notice "to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action." Id. 6514.[1] Section 6515 provides that in all actions (except those seeking mortgage foreclosures, partition, or dower), a property owner may move to substitute a bond for the notice of pendency if "adequate relief can be secured to the plaintiff." Id. 6515(1).

New York's notice of pendency has been described as an "extraordinary privilege," Israelson v Bradley, 308 N.Y. 511, 516, 127 N.E.2d 313, 315 (1955), and a "unique provisional remedy," In re Sakow, 97 N.Y.2d at 441, 767 N.E.2d at 670, principally because it may be filed without advance notice or prior judicial review, and does not depend upon a showing that the plaintiff is likely to prevail on the merits. See id. Accordingly, Article 65 is narrowly

---

[1] A property owner who seeks damages for misuse of a notice of pendency may also bring an action for malicious prosecution or abuse of process. 13 Weinstein, New York Civil Practice: CPLR ¶ 6514.11, at 65-71.

7

interpreted by New York courts, both as to its procedural requirements and as to its substantive application. See 5303 Realty Corp., 64 N.Y.2d at 320-21, 476 N.E.2d at 281. The many uses of the notice are set forth in the margin.[2] Although a court must uphold a notice of pendency if the underlying complaint sets forth a claim within the scope of C.P.L.R. 6501, the court may evaluate the claim's legal sufficiency and, if facially insufficient, the court should cancel the notice. See 13 Weinstein, New York Civil Practice: CPLR ¶ 6501.05, at 65-11; Gallagher Removal Serv., Inc. v. Duchnowski, 179 A.D.2d 622, 623, 578 N.Y.S.2d 584, 585 (App. Div. 1992) (cancelling notice of pendency based on

---

[2] A notice of pendency is mandatory in an action to foreclose a mortgage or to quiet title. See 13 Weinstein, New York Civil Practice: CPLR ¶ 6501.06, at 65-13. Filing of a notice of pendency has been found proper in the following types of actions: partition, ejectment, dower, specific performance of a contract to convey an interest in real property, to impress a lien upon real property, to compel the reconveyance of an interest in specific real property, to rescind a referee's deed, to establish and enforce a mechanic's lien on real property, to establish the plaintiff's undivided interest in real property, to foreclose a vendee's or vendor's lien, to convert a purported deed into a mortgage, to set aside a fraudulent conveyance, to enjoin violation of a zoning ordinance, to enforce an easement, to void an agreement creating an easement, in a stockholder's derivative suit to compel the reconveyance of real property to the corporation, to impress a constructive trust on real property, and for an accounting. See id. ¶ 6501.06, at 65-13-17.

an expired option to purchase property).

**II**

Jehed Diamond, Oscar Diaz and Joseph Betesh each brought an action challenging New York's notice of pendency statute principally on due process grounds.  The Diamond and Betesh lawsuits were consolidated in the district court, and their appeal from the dismissal of the consolidated action was heard in tandem with the appeal from the dismissal of the Diaz action.  Unless otherwise indicated, the following facts are taken from the three complaints and supporting documents, which we assume to be true in reviewing a Federal Rule of Civil Procedure 12(b)(6) dismissal.  Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 128 (2d Cir. 2007).

Diamond.  Jehed Diamond and her husband together purchased a home in Delaware County, New York.  Although title was in the husband's name, the couple intended to hold the property jointly as marital property pursuant to New York's domestic relations laws.  In May 2002, Diamond learned that her husband had secretly dissipated marital assets to fuel a gambling addiction.  Diamond immediately

demanded that her husband yield title to the marital home, which was the only asset remaining from the marriage. On May 17, 2002, her husband conveyed the deed to Diamond, who was a bona fide purchaser for fair consideration.

Diamond contracted with a buyer for the property in July 2002. Around the same time, Diamond learned that her husband had obtained a series of personal loans from several individuals, including their neighbor Christopher Jones. On October 1, 2002, approximately six weeks before the scheduled closing, Jones filed a lawsuit and a notice of pendency in Delaware County pursuant to N.Y. C.P.L.R. 6501, alleging that over the prior year he had loaned $90,000 to Diamond's husband in reliance on his verbal promise to repay out of the proceeds from the eventual sale of the house, and that the May 2002 transfer of the property to Diamond was a fraudulent conveyance intended to evade repayment of the loan (although Jones did not allege that Diamond knew of the debt at the time). Jones' complaint attached a promissory note evidencing the debt.

Diamond filed an order to show cause in state court, seeking to vacate the notice, and the state court set a hearing for the day before the closing. In order to induce

Jones to lift the notice of pendency in time to allow Diamond to complete the sale of the property, Diamond agreed to place $100,000 from the sale of the property in escrow pending the outcome of Jones' lawsuit. Accordingly, the notice of pendency was cancelled, and the sale closed on schedule. Diamond's federal complaint alleges, however, that the adverse effect of the notice was perpetuated in the ensuing litigation between Diamond and Jones over the escrow agreement. As the record on appeal arguably reflects, Diamond's constitutional and other defenses were rejected by the state court; the escrow agreement weakened Diamond's leverage in settlement negotiations; and she ended up paying Jones most of the money in escrow.

In June 2003, Diamond filed a complaint (the first of the three class action complaints at issue here), asserting claims under 42 U.S.C. § 1983 on the ground that Article 65 permits the deprivation of property without due process, and illegally discriminates against married persons who are creditors of their spouses by depriving them of access to lis pendens procedures available to non-spousal creditors. The complaint also alleged violations of Diamond's New York state constitutional rights to due process and equal

11

protection.  The complaint named as defendants New York's governor, attorney general and comptroller (individually and in their official capacities), the Delaware County Clerk in his official capacity, and Mr. Jones.  Diamond sought preliminary and permanent injunctive relief, declaratory relief, actual and punitive damages, and costs and fees.

Diaz.  In 2003, after Oscar Diaz fell behind in payments on his home mortgage, Churchill Mortgage Investment Corporation foreclosed and filed a notice of pendency in Bronx County.  Diaz alleges in his complaint that he had various predatory lending defenses and state law claims of deceptive practices.

In December 2003, Diaz (represented by the same counsel as Diamond), filed a federal putative class action complaint that was referred as a related case to Judge Stein.  The Diaz complaint alleged federal due process and equal protection violations, seeking the same relief as Diamond (but did not assert state law claims).  The complaint named the same state defendants, the Bronx County Clerk, and Churchill.  In March 2005, Diaz's counsel advised the district court that a sale had been negotiated to pay off

12

the mortgage, and that the state foreclosure action would be dismissed and the notice of pendency cancelled.  Diaz continued to prosecute the federal action, on the theory that the notice of pendency compelled him to sell his home at a price below market.

Betesh.  In 1996, Joseph Betesh exercised a power of attorney granted by his mother to transfer to himself his mother's two-family house in East Elmhurst, New York.  His mother died sometime later.  In June 2004, the house was damaged by fire and rendered largely uninhabitable.  In August 2004, Betesh signed a $60,000 loan commitment for a home equity loan at a New York City-subsidized interest rate.  On August 12, 2004, Betesh's brother filed a lawsuit and notice of pendency in Queens County alleging that the 1996 transfer had been improper because the power of attorney was invalid.  Betesh was soon informed that he could not receive the home equity loan because of the notice of pendency.

In October 2004, Betesh, acting pro se, filed an order to show cause in state court to dismiss his brother's action and to revoke the notice of pendency; but relief was denied

13

on procedural grounds.  Betesh then retained a lawyer, who moved to dismiss the state court action and vacate the notice on state law grounds, including that the suit was time-barred.  That motion was pending when, in May 2005, Betesh filed his federal putative class-action complaint, alleging the same federal due process claim made in the Diamond and Diaz complaints, but not alleging equal protection or state law claims.  The complaint named the same state defendants, the Queens County Clerk, and Betesh's brother.  Betesh sought the same relief as the other plaintiffs.  He seeks damages on the theory that he lost rent because the notice of pendency interfered with the repair of the house.

After the federal complaint was filed, the state court action against Betesh was dismissed, and the notice of pendency was ultimately cancelled.

**III**

The first of the federal complaints was filed by Diamond in June 2003, and was dismissed in September 2003 under the Rooker-Feldman doctrine, on the ground that Diamond was seeking review of the state court judgments

14

concerning the same constitutional issues. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). While Diamond's appeal was pending, the same counsel filed the Diaz action, which elided the Rooker-Feldman objection because Diaz had not litigated the constitutional issues in state court. The Diaz action was assigned to the same judge as a related case. In March 2005, counsel advised the court that Diaz had arranged to sell his home and to remove the notice of pendency, developments that would render moot the request for injunctive relief. In order to preserve a claim for injunction, counsel identified Betesh as a potentially suitable plaintiff, and moved on his behalf to intervene in the Diaz action.[3]

Betesh's motion was never decided because in April 2005

---

[3] As noted above, the lis pendens notices in all three underlying actions ultimately were cancelled, rendering moot plaintiffs' claims in federal court for injunctive relief. However, these appeals are not moot insofar as plaintiffs seek damages. See Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury, 445 F.3d 136, 150-51 (2d Cir. 2006). Because we uphold the constitutionality of the New York statute, we do not need to consider whether the moot claims for injunctive relief were nonetheless justiciable under the exception for harms that are "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam) (internal quotation marks omitted).

15

the district court dismissed the Diaz complaint under Rule 12(b)(6).  See Diaz v. Pataki, 368 F. Supp. 2d 265 (S.D.N.Y. 2005).  The court held that:  (1) Diaz's claim for injunctive relief was mooted by the sale of the property, id. at 269-70; (2) the claim for money damages against state officials failed because there was no allegation of personal involvement and because the Eleventh Amendment bars such relief against government defendants, id. at 270-71; (3) Diaz's claim for declaratory relief on equal protection grounds failed because Article 65 is not discriminatory on its face and because there was no allegation of illegal discrimination in connection with the application of the statute in Diaz's case, id. at 272; (4) the facial challenge to the statute failed because Diaz did not allege facts showing there exists no set of circumstances under which the statute would be valid, id. at 274-75; and (5) Diaz's as-applied challenge failed under the three-part analysis set forth in Connecticut v. Doehr, 501 U.S. 1, 11 (1991), id. at 276-78.  Betesh thereafter filed his separate class-action complaint.

In July 2005, Diamond's appeal was resolved by a remand after the Supreme Court decided Exxon Mobil Corp. v. Saudi

16

Basic Indus. Corp., 544 U.S. 280 (2005), which rendered the Rooker-Feldman doctrine plainly inapplicable to Diamond's case. Diaz was allowed to withdraw his appeal of the dismissal order without prejudice to reactivation after a final decision in the Diamond and Betesh cases.

In August 2006, the district court consolidated the Diamond and Betesh cases, and denied a motion for class certification on the ground that the proposed class representatives did not have claims or defenses "typical of the claims or defenses of the class." See Fed. R. Civ. P. 23(a)(3). In February 2007, the district court dismissed the Diamond/Betesh action under Rule 12(b)(6), for essentially the same reasons as set forth in its Diaz opinion. See Diamond v. Pataki, No. 03 Civ. 4642, 2007 WL 485962 (S.D.N.Y. Feb. 14, 2007).

The Diamond/Betesh appeal is now heard in tandem with the reactivated Diaz appeal. Five issues are presented: (1) whether New York's lis pendens statute violates due process, on its face or as applied, by failing to provide notice and an opportunity to be heard; (2) whether the statute unconstitutionally discriminates against women in violation of equal protection; (3) whether the statute

17

violates the fundamental right of access to the courts; (4) whether state officials involved in the operation of the lis pendens law are entitled to qualified immunity; and (5) whether to certify a putative plaintiff class of property owners subject to the law and a putative defendant class of all county clerks. We decide the first two questions, and hold that Article 65 does not offend either federal due process or equal protection guarantees. We do not consider whether Article 65 obstructs access to the courts because this issue is raised for the first time on appeal. See Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir. 2006). Because we affirm the dismissal of the complaints, we do not reach the issues of qualified immunity or class certification.

**IV**

The grant of a motion to dismiss is reviewed de novo. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003).

### A. Due Process

"Parties whose rights are to be affected" are entitled

18

to "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (internal quotation marks omitted). Evaluation of due process challenges to statutes affecting property interests traditionally has required a two-part analysis: (1) does the statute authorize the deprivation of a "significant property interest" protected by the Fifth Amendment, id. at 86; and (2) if so, what process is due in the particular circumstances, Mathews v. Eldridge, 424 U.S. 319, 334 (1976). See also Ford Motor Credit Co. v. NYC Police Dep't, 503 F.3d 186, 190 (2d Cir. 2007).

As to the first inquiry, defendants argue that the filing of a notice of pendency does not trigger due process scrutiny because it does not deprive plaintiffs of property: a notice of pendency creates no property right in another party and merely prevents the seller from withholding the fact that there are adverse claims to the realty; it is the underlying lawsuit that potentially affects the owner's property interest. Defendants principally rely on criminal forfeiture cases that, in dicta, deem lis pendens a "less restrictive" alternative to the ex parte seizures of

19

property that violate due process. See, e.g., United States v. James Daniel Good Real Prop., 510 U.S. 43, 62 (1993); United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1265 (2d Cir. 1989) (same); cf. Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 15 (1984) ("It is certainly possible . . . that the initiation of condemnation proceedings, publicized by the filing of a notice of lis pendens, reduced the price that the land would have fetched, but impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking.").

The cited cases (which in any event do not involve a direct challenge to a lis pendens statute) must be read in light of Doehr, which held that due process concerns may be triggered by something less than "a complete, physical, or permanent deprivation of real property." Doehr, 501 U.S. at 12. "[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Id.

A notice of pendency is arguably such a "similar encumbrance"--though two circuit courts have ruled

otherwise.[4]  In any event, we need not decide whether a lis pendens effects a "significant taking of property," <u>Fuentes</u>, 407 U.S. at 86, because we conclude, in deciding what process would be due, that New York's lis pendens statute provides all the process that is due in respect of the claimed property interests at stake.  In so holding, we rely on the framework set forth in <u>Doehr</u> for analyzing due process objections to prejudgment remedies.

<u>Doehr</u>, a challenge to Connecticut's prejudgment attachment statute, arose from an assault and battery tort

[4] <u>See</u> <u>United States v. Register</u>, 182 F.3d 820, 837 (11th Cir. 1999) ("[A] filing of a lis pendens pursuant to state statute does not constitute a 'seizure' and does not affect property interests to an extent significant enough to implicate the Due Process Clause of the Fifth Amendment."); <u>Aronson v. City of Akron</u>, 116 F.3d 804, 811 (6th Cir. 1997) ("In addition to impairing the owner's ability to sell his interest in the property, a lis pendens [like the corrupt activity lien under consideration, which does not 'constitute a seizure of property in the ordinary sense of that term'] . . . may taint the owner's credit rating, may place an existing mortgage in technical default, may make it impossible to obtain a second mortgage, and may have other adverse consequences.  <u>But</u> . . . <u>this would not trigger the notice and hearing requirement</u>."  (emphasis added) (internal quotation marks omitted)); <u>cf.</u> <u>United States v. Jarvis</u>, 499 F.3d 1196, 1203 (10th Cir. 2007) ("The [lis pendens] notice is intended to preserve the property rights in existence at the time the litigation commences, but does not create new or additional property rights.").  A district court in this Circuit decided pre-<u>Doehr</u> that a lis pendens is not "a taking for due process purposes."  <u>See</u> <u>United States v. Rivieccio</u>, 661 F. Supp. 281, 297 (E.D.N.Y. 1987).

21

claim.  The victim sued Doehr, the alleged assailant, and filed a $75,000 notice of attachment on Doehr's home as security for any judgment.  See Doehr, 501 U.S. at 5.  At the time, Connecticut law authorized prejudgment attachment of real estate without affording the owner notice or prior hearing or bond, as long as the plaintiff in the underlying suit, or "some competent affiant," verified that there is probable cause to sustain the plaintiff's claims.  Id. at 5 (internal quotation marks omitted).  The attachment effected a seizure of the property, impairing Doehr's ability to sell or encumber it, although not preventing continued use and enjoyment.  Only after the sheriff attached the property did Doehr receive service of the complaint in the underlying action, and the notice of attachment.  Id. at 7.  Doehr argued that the statute as applied to him violated due process, and the Supreme Court agreed.  Id. at 13-18.

To ascertain whether and what process was due, the Doehr Court adapted the Mathews balancing test (employed in cases of government deprivation of property), to govern private disputes in which one party enlists the state to assert prejudgment control over the other party's property.  Doehr, 501 U.S. at 10.  The Doehr test examines three

22

factors:

> first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

Id. at 11.

Applying that test, the Court first found significant impact on Doehr's private interest: tainted credit rating, clouded title, and impaired ability to alienate the property. Id.

Second, as to the risk of erroneous deprivation, the "probable cause" standard for obtaining an attachment order was deemed "one-sided, self-serving, and conclusory." Id. at 14. Because probable cause required only a facially valid complaint, the statute allowed "deprivation of the defendant's property when the claim would fail to convince a jury[ or] when it rested on factual allegations that were sufficient to state a cause of action but which the defendant would dispute." Id. at 13-14. The likelihood of

error was heightened in the context of intentional tort actions seeking indefinite damages, and insufficiently mitigated by the availability of a post-attachment adversarial hearing. Id. at 14-15.

Third, the Court concluded that the interests of the tort plaintiff in the ex parte attachment of the house were "minimal" because the assault and battery claim bore no relation to the real property, and the "plaintiff had no existing interest in Doehr's real estate when he sought the attachment." Id. at 16. The Court considered that no "exigent circumstance" had been identified, such as a claim that Doehr was about to take steps that would render his property unavailable to satisfy a judgment, id.; that Connecticut was one of only three states to authorize attachment "in situations that do not involve any purportedly heightened threat to the plaintiff's interest," id. at 18; and that "accurate ex parte assessments of the merits," which are feasible in commercial disputes, are hard to make when the claim sounds in tort, id. at 17.

Because all three Doehr factors raised substantial due process concerns, the Court concluded that the statute was

unconstitutional as applied in that case.[5]

Chief Justice Rehnquist filed a concurrence to emphasize that the Court's holding did not disturb settled law upholding the constitutionality of prejudgment remedies where the plaintiff had a pre-existing interest in the property, such as a mechanic's lien or a lis pendens. See Doehr, 510 U.S. at 27-29 (Rehnquist, C.J., concurring) (citing Spielman-Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997, 999 (D. Ariz. 1973), aff'd by 417 U.S. 901 (1974), and Bartlett v. Williams, 464 U.S. 801 (1983) (dismissing Williams v. Barlett, 189 Conn. 471, 457 A.2d 290 (1983), "for want of a substantial federal question")).

This Circuit has similarly interpreted the Doehr majority to have rested its due process holding on the application of Connecticut's statute to an intentional tortfeasor, as opposed to a creditor with an existing interest in the property. See Shaumyan v. O'Neill, 987 F.2d 122, 126-27 (2d Cir. 1993) (upholding the same Connecticut statute as applied to contractor's claim for payment of "an

_____

[5] A four-member plurality also reached the non-precedential conclusion that the absence of a bond requirement in the Connecticut statute violated due process. See Doehr, 501 U.S. at 18-23 (White, J., concurring).

25

outstanding sum certain" for completed repairs to attached property); cf. British Int'l Ins. Co. v. Seguros La Republica, S.A., 212 F.3d 138, 144 & n.3 (2d Cir. 2000) (per curiam) (stating in dicta that a claim for a contractually-defined sum "appears to fall into the category of cases cited in Doehr as 'lend[ing] themselves to accurate ex parte assessments of the merits'" (quoting Doehr, 501 U.S. at 17)).

In applying Doehr to this case, we consider the material distinctions between the Connecticut statute in Doehr and New York statute at issue here, and remain mindful that "[d]ue process is inevitably a fact-intensive inquiry." Krimstock v. Kelly, 306 F.3d 40, 51 (2d Cir. 2002).

1. The first Doehr consideration is the effect of the statutory imposition on the property owner's private interest. Lis pendens, unlike attachment is "a well-established, traditional remedy," the effect of which "is simply to give notice to the world of the remedy being sought in the lawsuit itself" and which "creates no additional right in the property on the part of the plaintiff." Doehr, 501 U.S. at 29 (Rehnquist, C.J., concurring); see 13 Weinstein, New York Civil Practice: CPLR

26

¶ 6501.11, at 65-24 (describing New York notice of pendency statute in similar terms). Accordingly, the owner of property subject to a lis pendens continues to be able to inhabit and use the property, receive rental income from it, enjoy its privacy, and even alienate it. See, e.g., Kirby Forest Indus., Inc., 467 U.S. at 15. For this reason, lis pendens is deemed one of the "less restrictive" means of protecting a disputed property interest. See James Daniel Good Real Prop., 510 U.S. at 62; 4492 S. Livonia Rd., 889 F.2d at 1265. The impact of New York's lis pendens statute is further mitigated because it is available only in actions "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property," N.Y. C.P.L.R. 6501--a standard that is strictly construed. See 5303 Realty Corp., 64 N.Y.2d at 321, 476 N.E.2d at 281.

Nevertheless, plaintiffs allege that the marketability of their property was compromised before they were afforded an opportunity to contest the lis pendens. The following loss and detriment is claimed: Diaz sold his home only after some delay and compromise; Betesh could not get a construction loan; and Diamond, though she sold her property on schedule, suffered detriments arising out of the

alternative security she had to provide.  We decline to look behind these claims at this preliminary stage of proceedings.[6]  We therefore conclude that the first <u>Doehr</u> factor supports plaintiffs' position, although not so decisively as in <u>Doehr</u>.

2.  The second <u>Doehr</u> factor assesses the risk that a notice of pendency would be wrongfully filed under existing procedures, and the probable value of additional statutory safeguards.  In <u>Doehr</u>, a substantial risk of error was created by the nature of the underlying claim:  an intentional tort that had no connection to the property and did not "readily lend [itself] to accurate <u>ex parte</u> assessment[] of the merits."  <u>Doehr</u>, 501 U.S. at 17.  <u>See also</u> <u>Shaumyan</u>, 987 F.2d at 126 (reading <u>Doehr</u> to disapprove attachment procedure that "did not protect the [property owner] against the uncertainties that are associated with intentional tort cases").

---

[6] The validity of these claims is contestable:  It is unclear why Diaz should have been able to delay notice to potential buyers that the property was subject to a mortgage lien and was in foreclosure, or why Betesh should have been able to delay disclosure of his brother's claim from the New York City-subsidized lender; and Diamond's only detriment was to pay part of the proceeds to discharge a debt she was found to owe.

28

By contrast, the risk of erroneous deprivation is minimal under the New York lis pendens procedure, which is available only to claimants asserting a defined interest in the property. The three lis pendens here were filed by creditors whose claims were pre-existing, readily quantifiable, and largely susceptible to proof by documentary evidence: Diamond's property was subject to a promissory note for a sum certain; Diaz's property was subject to a mortgage; Betesh's property was subject to a claim for half-ownership by a brother who contested the validity of the documents used to transfer the property to Betesh. Defenses notwithstanding, the underlying claims (unlike tort claims) involved relatively "'uncomplicated matters that lend themselves to documentary proof.'" Doehr, 501 U.S. at 14 (quoting Mitchell v. W.T. Grant Co., 416 U.S. 600, 609 (1974) (upholding ex parte sequestration based on vendor's lien that could be determined on the documentary record)).

The risk of error was further reduced by Article 65's procedural safeguards. Plaintiffs contend that the statute does not protect the property owner by notice and a sufficient opportunity to challenge the lis pendens, or by

the posting of bond. As to notice, the statute requires service of a summons within 30 days after filing a lis pendens in order to preserve it, thus apprising the property owner of a claim against the property. See N.Y. C.P.L.R. 6512. As to opportunity to be heard, the statute provides for a hearing to challenge the lis pendens, and for cancellation of the lis pendens upon a showing that the plaintiff in the underlying lawsuit "has not commenced or prosecuted the action in good faith." Id. 6514(b); see, e.g., Josefsson v. Keller, 141 A.D.2d 700, 701, 530 N.Y.S.2d 10, 11 (App. Div. 1988). Notice and hearing are afforded post-deprivation; but such procedural safeguards suffice where "the nature of the issues at stake minimizes the risk" of wrongful deprivation. Mitchell, 416 U.S. at 609-10; see also Shaumyan, 987 F.2d at 127 (upholding procedural safeguards "similar to those in the statute that was upheld in Mitchell").

The scope of a court's review when asked to cancel a notice of pendency pursuant to C.P.L.R. 6514(b) appears to have once been unclear. In 1983, one lower court in New York held that due process required consideration of the merits of the underlying action. Hercules Chem. Co. v. VCI,

30

*Inc.*, 118 Misc. 2d 814, 826, 462 N.Y.S.2d 129, 137 (Sup. Ct. 1983). But the New York Court of Appeals subsequently held that "the court's scope of review" when considering whether to cancel a notice of pendency pursuant to C.P.L.R. 6514(b) "is circumscribed," so that "likelihood of success on the merits is irrelevant . . . ." 5303 Realty Corp., 64 N.Y.2d at 320, 476 N.E.2d at 280.

Some other states have enacted lis pendens statutes that require more than a showing of good faith. For example, Connecticut requires that the filer of the notice "establish that there is probable cause to sustain the validity of his claim," Conn. Gen. Stat. 52-325b(a); New Jersey requires the showing of "a probability that final judgment will be entered in favor of the plaintiff," N.J.Stat. Ann. 2A-15-7(b); and Nevada requires that the party who seeks a notice of pendency must show that he is "likely to prevail" in the underlying suit. Nev. Rev. Stat. Ann. 14.015.[7]

The Supreme Court has noted the danger of allowing the

---

[7] The plaintiffs advise that legislation is currently pending in the New York State Legislature which would "expand the grounds on which to vacate" a notice of pendency in some unspecified fashion.

31

issuance of an attachment without a sufficient examination

of the merits of the underlying suit:

> Permitting a court to authorize attachment merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint, would permit the deprivation of the defendant's property when the claim would fail to convince a jury, when it rested on factual allegations that were sufficient to state a cause of action but which the defendant would dispute, or in the case of a <u>mere good-faith standard, even when the complaint failed to state a claim upon which relief could be granted</u>.

<u>Doehr</u>, 501 U.S. at 13-14 (emphasis added).  This statement

is dicta, however; and we cannot say that C.P.L.R. 6514(b)'s

employment of "a mere good-faith standard" constitutes a

violation of due process.  At the same time, this standard

does not afford the most meaningful process to a property

holder burdened by a notice of pendency filed in conjunction

with a patently meritless law suit.

We similarly reject plaintiffs' assertion that the

statute's procedure for substituting a bond is defective.

<u>See</u> N.Y. C.P.L.R. 6515.  Plaintiffs argue that due process

requires that the notice filer also post a bond in every

case.  However, only a plurality of the Court in <u>Doehr</u>

reached the issue of the significance of a bond requirement,

32

see 501 U.S. at 18-23 (White, J., concurring), and this Circuit "has continued to adhere to our previously established position that a security bond need not be posted in connection with a prejudgment attachment in order to satisfy the requirements of due process." Result Shipping Co. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 402 (2d Cir. 1995). On the whole, the second Doehr factor weighs in favor of upholding the constitutionality of Article 65.

3. The last Doehr factor considers the interest of the claimant and the state. Doehr, 501 U.S. at 11. The Doehr Court discounted the interest of a claimant who had no pre-existing stake in the attached property and no asserted basis for fearing that the attached property might become unavailable during the pendency of the underlying lawsuit. Id. at 16. By contrast, lis pendens in New York is available only to secure claims of existing interests in the realty at issue. See Mitchell, 416 U.S. at 604 (observing that when the property owner and the creditor both have "current, real interests in the property, . . . [r]esolution of the due process question must take account not only of the interests of the [owner] of the property but those of

33

the [creditor] as well"). The claimant's interest carries more weight here than in Doehr.[8]

Likewise, New York has greater interest in the prejudgment remedy than Connecticut had in Doehr. By securing the unique property that is the subject matter of the litigation, the New York lis pendens procedure protects the court's power over the disposition of that property. See 5303 Realty Corp., 64 N.Y.2d at 319, 476 N.E.2d at 280. Without lis pendens, actions such as those brought against plaintiffs here could be frustrated by transfer or encumbrance of the property in favor of an innocent third party who lacked notice. "If the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, pendente lite, to a purchaser without notice, additional litigation would be spawned and the public's confidence in the judicial process could be

---

[8] Moreover, in two of the underlying actions, the notice of pendency was filed after the property owner attempted to transfer or encumber the property. Diamond had already entered a contract for sale of her property, and Betesh had applied for a home equity loan, when notices of pendency were filed to preserve the property. The prospect of imminent alienation of the property at stake in the underlying lawsuit "would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected." Doehr, 501 U.S. at 16.

34

undermined." Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1329 (3d Cir. 1982). Taken together, the interests of the claimant and the state in the availability of the lis pendens remedy are substantial, and weigh in favor of the constitutionality of the statute.

We conclude, as to all of the plaintiffs, that their property interest as affected by the lis pendens carries some weight, but it is outweighed by the remaining considerations. In view of the procedural safeguards of Article 65--in particular its narrow application to pre-existing claims affecting the property, and its provisions for post-deprivation notice and hearing--the statute satisfies the Due Process Clause of the Fourteenth Amendment.

Because plaintiffs have failed to plead facts establishing that Article 65 is unconstitutional as applied to them, they necessarily fail to state a facial challenge, which requires them to "'establish that no set of circumstances exists under which the [statute] would be valid.'" Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 110 (2d Cir. 2003) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); see also Shaumyan, 987

35

F.2d at 126 (following <u>Doehr</u> in conducting only an as-applied analysis of the statute). Therefore, we affirm the district court's dismissal of the due process claims.

## B. Equal Protection

Plaintiffs argue that New York's lis pendens law violates the Equal Protection Clause of the Fourteenth Amendment because it "discriminates against married persons who are creditors of their spouses by depriving them of the protections, rights, and remedies granted non-spousal creditors without any rational basis." (Diamond Compl. ¶ 68.) Plaintiffs assert this claim on behalf of Diamond alone, alleging that she, "as a creditor of [her husband] stands in a disadvantaged position vis a vis Jones" because Jones "was able to place a lis pendens on the marital residence" whereas Diamond could not. (Diamond Compl. ¶ 56.)[9]

Article 65 is facially neutral: it does not refer to marital status or distinguish in any way between spousal and

---

[9] Diaz asserted an equal protection claim, but it was abandoned on appeal; we therefore do not review the district court's dismissal of that count. See <u>LoSacco v. City of Middletown</u>, 71 F.3d 88, 92-93 (2d Cir. 1995).

36

non-spousal creditors; it does not stop one spouse from using the procedure against the other; and it does not exclude marital property.  A facially neutral statute violates equal protection only if it "has been applied in an intentionally discriminatory manner" or "has an adverse effect and . . . was motivated by discriminatory animus." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000); see also Harris v. McRae, 448 U.S. 297, 323 n.26 (1980) ("[W]hen a facially neutral . . . statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress selected or reaffirmed a particular course of action at least in part 'because of,' not merely in 'spite of,' its adverse effects upon an identifiable group." (internal quotation marks omitted)).

Diamond's complaint does not allege intentional discrimination in the application or effect of Article 65. Accordingly, the district court held that she failed adequately to plead an equal protection claim.  See Diamond v. Pataki, No. 03 Civ. 4642, 2007 WL 485962, at *6 (S.D.N.Y. Feb. 14, 2007).

On appeal, Diamond argues that the statute has been interpreted by New York courts to bar a spouse-creditor

37

(such as Diamond) from placing a lis pendens on the marital residence. Diamond cites New York matrimonial cases holding that a spouse is not entitled to file a lis pendens in order to secure equitable distribution of property. See, e.g., Fakiris v. Fakiris, 177 A.D.2d 540, 543, 575 N.Y.S.2d 924, 927 (App. Div. 1991); Gross v. Gross, 114 A.D.2d 1002, 1003, 495 N.Y.S.2d 441, 443 (App. Div. 1985).

The cases cited by Diamond stand only for the proposition that under New York law, a claim for equitable distribution does not seek a judgment that affects the property in a manner contemplated by Article 65. See Gross, 114 A.D.2d at 1003, 495 N.Y.S.2d at 443 ("The fact that plaintiff may be entitled to an equitable distribution with regard to the residence does not give rise to [the extraordinary] privilege [of filing of a notice of pendency]."); Fakiris, 177 A.D.2d at 543, 575 N.Y.S.2d at 927 (citing Gross for same); see also Sehgal v. Seghal, 220 A.D.2d 201, 201, 631 N.Y.S.2d 360, 361 (App. Div. 1995) ("A claim that real property is a marital asset subject to distribution does not, by itself, establish grounds for a lis pendens."). The "narrow application" of Article 65, 5303 Realty Corp., 64 N.Y.2d at 315, 476 N.E.2d at 278, and

38

not any discriminatory intent, is the reason lis pendens is unavailable in connection with a claim for equitable distribution.

Furthermore, it is well-settled under New York law that spouses may avail themselves of Article 65 to file notices of pendency against each other--in those cases that "would affect the title to, or the possession, use or enjoyment of, real property," N.Y. C.P.L.R. 6501. See, e.g., Caruso, Caruso & Branda, P.C. v. Hirsch, 41 A.D.3d 407, 409, 837 N.Y.S.2d 734, 736 (App. Div. 2007) (noting availability of lis pendens in divorce action where one spouse alleged fraudulent conveyance and sought imposition of a constructive trust against the other's property); Elghanayan v. Elghanayan, 102 A.D.2d 803, 804, 477 N.Y.S.2d 163, 163-64 (App. Div. 1984) (same); Bennett v. Bennett, 62 A.D.2d 1154, 1154-55, 404 N.Y.S.2d 171, 172-73 (App. Div. 1978) (lis pendens available in former wife's action to set aside ex-husband's conveyance of his share in realty that they had previously owned by the entirety); Ventura v. Ventura, 27 Misc. 2d 338, 339, 211 N.Y.S.2d 227, 228 (Sup. Ct. 1960) (lis pendens available in spouse's action to impose equitable lien).

Diamond never brought the type of action against her husband that would have entitled her to file a notice of pendency; Jones did. Thus the disparity between the remedies at their disposal was not the result of statutory discrimination, but of the parties' claims and litigation choices.

As Article 65 poses no bar--on its face or in its operation--to spousal lis pendens in claims cognizable under the statute, we affirm the district court's dismissal of the equal protection claim.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

40